**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**AUG 21 2001**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

ARTHUR DONNELL MILLER, JR.,

       Petitioner-Appellant,

v.

RON CHAMPION,

       Respondent-Appellee.

No. 00-6138

**Appeal from the United States District Court**
**for the Western District of Oklahoma**
**(D.C. No. 97-CV-867-A)**

Susan M. Otto, Federal Public Defender (Paul Antonio Lacy, Assistant Federal Public Defender, with her on the briefs), Oklahoma City, Oklahoma, for Petitioner-Appellant.

Patrick T. Crawley, Assistant Attorney General (W.A. Drew Edmondson, Attorney General, Seth S. Branham, Assistant Attorney General, with him on the brief), Oklahoma City, Oklahoma, for Respondent-Appellee.

Before **EBEL,** Circuit Judge, **MCWILLIAMS**, Senior Circuit Judge, and **BALDOCK**, Circuit Judge.

**EBEL**, Circuit Judge.

Petitioner-Appellant Arthur Donnell Miller, Jr. ("Miller") appeals the district court's order denying his petition for habeas corpus pursuant to 28 U.S.C. § 2254. Specifically, Miller challenges the district court's finding that he was not prejudiced by his attorney's ineffective assistance in advising him to plead guilty to a second-degree murder charge in Oklahoma state court without advising him of the proper elements of that offense. We hold that when a defendant alleges that his attorney's ineffective assistance led him to plead guilty, the test for prejudice is whether he can show that he would not have pled guilty had his attorney performed in a constitutionally adequate manner. It is not necessary for the defendant to show that he actually would have prevailed at trial, although the strength of the government's case against the defendant should be considered in evaluating whether the defendant really would have gone to trial if he had received adequate advice from his counsel. Applying this standard in light of the factual determinations made by the district court below, we AFFIRM.

## I. BACKGROUND

The facts surrounding Miller's petition are essentially undisputed. Miller and his nephew, Todd O'Shea Coburn, were both charged with first-degree murder in Kay County, Oklahoma for the May 6, 1995, shooting death of Dominic

Hamilton. Hamilton died of a single gunshot wound which entered his back and exited through his chest.

On the day of the shooting, Miller attended a family fish-fry at his father's home in Ponca City, Oklahoma. Miller, an alcoholic, drank heavily during the course of the day. Eventually, Miller, his wife Pam and brother Donald Ray went to a club known as "the Bucket." Miller encountered Hamilton, a long-term acquaintance, on the club's porch and began making jokes about Hamilton's weight. Hamilton took offense, and a fight ensued.

Miller's brother, Donald Ray Miller ("Donald Ray"), went for help, and Miller later told police that he was attacked, hit with a baseball bat, and cut with a knife in his brother's absence. A short time later, Donald Ray returned with Miller's sister, Rose Hodge Burgess ("Burgess"); Miller's nephew, Coburn, arrived soon thereafter with a .38 caliber semi-automatic pistol. Miller and his family members soon spotted Hamilton and two additional men, Ty Jones ("Jones") and Napoleon Elston ("Elston"), approaching with baseball bats. Jones threw a bat that narrowly missed Burgess, and Miller then took Coburn's gun. At this point, an onlooker shouted a warning that Miller had a gun, and everyone present, including Hamilton, turned to run. Miller fired once in the air, and then fired two more shots in the direction of Hamilton. Hamilton dropped to the

ground in a vacant lot across from the Bucket. The shooting occurred approximately ten minutes after Miller was first attacked.

Miller turned himself in to the Ponca City Police Department approximately three hours after the shooting and gave a statement to Police Lieutenant Barbara White. Lt. White testified that she confronted Miller with witness statements placing him at the scene with a gun and identifying him as the shooter, and that Miller confessed to killing Hamilton, alleging that he fired in self-defense.

Lt. White testified that she examined Miller, found no physical evidence that he had been hit with a bat, and concluded that wounds he attributed to a knife attack were minor. A second officer who observed Miller that night agreed. Witness statements given to police also undermined Miller's claim that he acted in self-defense. Witnesses told police that Hamilton was moving away from Miller and that he was at least twenty feet from Miller at the time of the shooting. Further, an autopsy report concluded that Hamilton was shot in the back from some distance away.

Miller and Coburn were both charged with first-degree malice murder. The trial court appointed Rob Galbraith, an attorney in private practice, to represent Miller. Galbraith testified that he conducted no formal investigation into the shooting, but said that he instead relied on Miller's description of the incident and that he had intended to use a preliminary hearing for discovery purposes. Midway

through the hearing, however, Galbraith learned that Coburn had reached a plea agreement with the State and most likely would testify against Miller. A short time later, he advised Miller to accept the state's offer of second-degree murder with a recommended sentence of thirty-eight years. Galbraith did not inform Miller of the elements of second-degree murder. Rather, he told Miller that second-degree murder did not really fit the facts of the case, but he advised Miller that the plea represented Miller's best chance to avoid a life sentence. Galbraith predicted that Miller would probably be convicted of first-degree murder and receive a life sentence if he were to go to trial. Miller accepted Galbraith's advice, pled guilty to second-degree murder, and received a thirty-eight-year sentence.

After exhausting state post-conviction remedies,[1] Miller filed the instant petition for habeas corpus under 28 U.S.C. § 2254, alleging that Galbraith was ineffective for failing to inform him of the elements of second-degree murder. Specifically, Miller alleges that, had he known that a prosecutor is required to prove the defendant acted with a "depraved mind" in order to secure a conviction

---

[1]Miller's claim of ineffective assistance of counsel was technically not exhausted at the state level. However, in Miller's first appeal of the federal district court's denial of his petition, we held that Oklahoma's procedural bar does not provide an adequate state law basis upon which to deny relief in this case. See Miller v. Champion, 161 F.3d 1249, 1252 (10th Cir. 1998).

for second-degree murder, Miller would not have pled guilty and instead would have exercised his right to trial by jury. [2]

The district court initially denied the petition on the ground that Miller failed to allege facts constituting inadequate performance by Galbraith. See Miller v. Champion, 161 F.3d 1249, 1252 (10th Cir. 1998) (hereinafter Miller I). This court reversed and remanded for an evidentiary hearing on Miller's claim. See id. at 1251. Specifically, we instructed the district court to determine whether: (1) Galbraith failed to inform Miller of the "depraved mind" element of Oklahoma's second-degree murder statute, and (2) whether the outcome of the state court proceedings would have changed had Miller known of the depraved mind element of the crime. See id. at 1259. The case was referred to a magistrate judge for initial proceedings pursuant to 28 U.S.C. § 636(b)(1). Following evidentiary hearings, the magistrate issued a report and recommendation that found that Galbraith failed to inform Miller of all of the elements of second-

---

[2]Miller's counsel in the present appeal suggested that we could reverse because Galbraith's advice was tainted by his failure to investigate the crime and because certain unspecified exculpatory information may not have been disclosed. We disagree. First, even a liberal reading of Miller's original pro se habeas petition does not raise this issue. Moreover, this issue exceeds the limited scope of our remand to the district court. See Miller v. Champion, 161 F.3d 1249, 1259 (10th Cir. 1998); cf. United States v. Hicks, 146 F.3d 1198, 1200 (10th Cir. 1998) ("The mandate rule is a discretion-guiding rule that generally requires trial court conformity with the articulated appellate remand, subject to certain recognized exceptions." (citation and quotations omitted).) Therefore, these issues were not properly before the district court, and we do not consider them on appeal.

degree murder, and that Miller's assertion that he would have pled not guilty but for Galbraith's ineffective assistance was not credible. In addition, the magistrate concluded that Miller would not have been acquitted if he had gone to trial. He therefore recommended that Miller's petition be denied. The magistrate relied heavily on the strength of the case the prosecution could have brought against Miller as evidence of whether Miller actually would have gone to trial if not for his counsel's errors. [3] The district court adopted the report and recommendation in full. Miller then filed the present appeal.

## II. DISCUSSION

We have jurisdiction over this appeal pursuant to 28 U.S.C. § 2253 and the district court's grant of Miller's request for a Certificate of Appealability. Claims of ineffective assistance of counsel raise mixed questions of law and fact. See, e.g., Hale v. Gibson, 227 F.3d 1298, 1314 (10th Cir. 2000); Smith v. Gibson, 197

---

[3]The magistrate said:

I don't think I have to take Mr. Miller's subjective statements that he would have insisted on going to trial had he been informed of the elements of second degree murder. I think it's an objective test and I look at all of the facts and circumstances, including whether or not there would have been a reasonable probability that he would be acquitted had he insisted on going to trial.

His credibility will be a key issue and I will be assessing his credibility as far as whether or not he would have insisted on going to trial.

F.3d 454, 461 (10th Cir. 1999).  Because Miller's claim has not previously been adjudicated by a state court, we review it de novo, granting due deference to the factual findings underlying the district court's determination.          See, e.g., Battenfield v. Gibson  , 236 F.3d 1215, 1220 (10th Cir. 2001) ("If a [habeas] claim was not decided on the merits by the state courts (and is not otherwise procedurally barred), we may exercise our independent judgment in deciding the claim.");  Romero v. Furlong  , 215 F.3d 1107, 1111 (10th Cir. 2000) (reviewing mixed questions of law and fact raised by ineffective assistance claim de novo, granting deference to underlying findings of fact);       United States v. Prows   , 118 F.3d 686, 691 (10th Cir. 1997) ("Whether a defendant received effective assistance of counsel is a mixed question of law and fact that we review de novo.").

This case presents two issues for appeal.  First, we consider whether the magistrate and district court erred by apparently requiring Miller to prove that Galbraith would have prevailed at trial in addition to proving that he would have changed his plea and would have insisted on going to trial.[4]  Next, we review the

_____

[4]The magistrate's report and the district court's opinion discussed both the likelihood that Miller would have changed his plea and the likelihood that Miller would have been acquitted had he gone to trial.  It is a bit unclear whether these were offered as alternative grounds for the district court's finding that Miller was not prejudiced, or whether the magistrate and the district court required Miller to prove both that he would have pled not guilty and that he would have been

(continued...)

district court's factual conclusions to determine whether Miller is entitled to habeas relief under the correct standard for demonstrating prejudice.

A. Standard for Showing Prejudice

The Supreme Court established the now familiar two-pronged test for proving ineffective assistance of counsel in Strickland v. Washington, 466 U.S. 668, 687 (1984). In order to establish a claim that his attorney was so ineffective as to require reversal of his conviction, Miller must show both that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment," and also that he was prejudiced because counsel's errors rendered the outcome of the state court's proceedings unreliable. See id. In this appeal, the State has not challenged the district court's finding that Galbraith failed to inform Miller of the elements of second-degree murder in Oklahoma, or its conclusion that this failure fell below an objective standard of reasonableness. We therefore consider only whether the district court applied the proper standard to determine whether Miller was prejudiced by Galbraith's ineffectiveness.

---

[4](...continued)
acquitted had he done so. For purposes of this appeal, we will accept Miller's interpretation of the magistrate and district court's ruling, which assumes that they required proof of both in order for Miller to show he was prejudiced by his counsel's ineffective performance.

One year after deciding <u>Strickland</u>, in <u>Hill v. Lockhart</u>, 474 U.S. 52 (1985), the Supreme Court specifically considered the appropriate standard for demonstrating that a guilty plea was tainted by ineffective assistance of counsel. The Court held that a prisoner challenging a guilty plea because of ineffective assistance satisfies the prejudice inquiry by showing that the constitutionally ineffective performance "affected the outcome of <u>the plea process</u>. In other words . . . that there is a reasonable probability that, but for counsel's errors, <u>he would not have pleaded guilty</u> and would have insisted on going to trial." <u>Hill</u>, 474 U.S. at 59 (emphasis added). However, the Court went on to note that courts applying this standard will often review the strength of the prosecutor's case as the best evidence of whether a defendant in fact would have changed his plea and insisted on going to trial. <u>See</u> <u>id.</u> at 59-60. The Court explained:

> In many guilty plea cases, the "prejudice" inquiry will closely resemble the inquiry engaged in by courts reviewing ineffective-assistance challenges to convictions obtained through a trial. For example, where the alleged error of counsel is a failure to investigate or discover exculpatory evidence, the determination whether the error "prejudiced" the defendant by causing him to plead guilty rather than go to trial will depend on the likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea. <u>This assessment, in turn, will depend in large part on a prediction whether the evidence likely would have changed the outcome of the trial.</u>

<u>Id.</u> at 59 (emphasis added).

This court has therefore held that a petitioner's "mere allegation" that he would have insisted on trial but for his counsel's errors, although necessary, is ultimately insufficient to entitle him to relief. See United States v. Gordon, 4 F.3d 1567, 1571 (10th Cir. 1993). Rather, we look to the factual circumstances surrounding the plea to determine whether the petitioner would have proceeded to trial. See id.; United States v. Wright, 43 F.3d at 491, 498 (10th Cir. 1994); Lassiter v. Thomas, 89 F.3d 699, 703-04 (10th Cir. 1996).

The first issue before us is whether the district court correctly applied the prejudice inquiry set forth in Lockhart to the facts of this case. Miller asserts that, in addition to requiring him to prove that a reasonable probability existed that he would have gone to trial, the district court erroneously required him to show a reasonable probability that he would have actually prevailed at trial had he done so. The district court, responding to Miller's objections to the magistrate's report and recommendation, made the following comments before denying Miller's petition:

> [P]etitioner challenges Judge Argo's analysis that petitioner would not have been acquitted at trial on the charge of second degree murder. Rather, petitioner contends that he need only prove he would have insisted on going to trial had he been advised of the elements of second-degree murder. Moreover, petitioner challenges Judge Argo's credibility determination.
> Petitioner's legal argument is meritless. The Tenth Circuit Court of Appeals clearly held in Miller v. Champion, supra, 161 F.3d at 1256-57, that petitioner must show that "had he rejected the State's plea bargain, the outcome of the proceedings 'likely would

- 11 -

have changed.'" The circuit noted that such proof requires a showing of a likelihood "a jury would have acquitted him of second-degree murder." Thus, Judge Argo's legal analysis was proper.

This language suggests that the district court believed Miller was not entitled to habeas relief unless he established a reasonable probability both that he would have gone to trial and that he would have successfully prevailed in his case to a jury.

Despite the fact that this language imposes an additional burden beyond that contemplated by the Supreme Court's decision in Lockhart, the State contends that the Tenth Circuit endorsed the district court's approach both in Miller I and in Braun v. Ward, 190 F.3d 1181 (10th Cir. 1999). It is true that our opinion in Miller I contained language which, when read in isolation, might support the district court's interpretation. See, e.g., 161 F.3d at 1257 ("However, under Hill v. Lockhart, whether a defendant could have been convicted of the crime to which he pleaded guilty is not the test. Rather, we must determine whether it is likely that a jury would have acquitted him of that crime."). When read in its entirety, however, our opinion in Miller I is fully consistent with Lockhart. Although the court placed heavy emphasis on the strength of the State's case, in the end it is clear that the evidence that might have been marshaled at trial was considered because it provided circumstantial evidence of the defendant's state of mind when he made his plea. See id. at 1259. Thus, for

- 12 -

example, after engaging in an extensive inquiry into the record at that stage of the proceedings, we concluded "a reasonable jury might even find him altogether innocent of any crime," and therefore "Mr. Miller has met his burden under Hill v. Lockhart of demonstrating that 'there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Id. at 1258-59. Likewise, our mandate specifically directed the district court to conduct a hearing to determine "whether there was a reasonable probability that, had Mr. Miller received . . . notice [of the elements of second-degree murder], he would not have pleaded guilty and would instead have insisted on going to trial." Id. at 1259.

Braun v. Ward picked up on some of the more expansive language in Miller I and, like the district court below, concluded that a petitioner must show a reasonable probability exists that he would have prevailed had he gone to trial. See 190 F.3d at 1188-89 (stating that Lockhart's prejudice inquiry "requires [the petitioner] to establish a reasonable probability that he would have plead not guilty and that a jury either would not have convicted him of first degree murder or would not have imposed the death penalty"(emphasis added)). The underlined portion of this statement goes too far.[5] It does not reflect the law as established

_____

[5]The Braun court also stated: "[t]he petitioner must show that his counsel's performance prejudiced him by demonstrating (1) that '"there is a reasonable
(continued...)

- 13 -

by the Supreme Court or as applied in the Tenth Circuit in the cases that preceded <u>Braun</u>.

To the extent that this language in <u>Braun</u> is inconsistent with our prior cases interpreting <u>Lockhart</u>, we are, of course, bound by our earlier rulings. <u>See</u>, <u>e.g.</u>, <u>United States v. Gray</u>, 182 F.3d 762, 767 (10th Cir. 1999) ("To the extent appellant contends his counsel's ineffectiveness made his guilty plea involuntary, he must show that had counsel performed effectively, he would not have pleaded guilty and would have proceeded to trial."); <u>Lasiter v. Thomas</u>, 89 F.3d 699, 703 (10th Cir. 1996) (same); <u>United States v. Carr</u>, 80 F.3d 413, 418 (10th Cir. 1996) (same); <u>United States v. Gordon</u>, 4 F.3d 1567, 1570 (10th Cir. 1993) (same); <u>cf.</u> <u>United States v. Wright</u>, 43 F.3d 491, 498 (10th Cir. 1994) (adopting <u>Lockhart</u> prejudice standard to determine whether plea should be remanded in light of alleged coercion by the prosecution, and determining remand was appropriate without considering the likelihood of success at trial). Cases decided after <u>Braun</u> have likewise not required a showing of probable success at trial in order to establish prejudice. <u>See</u>, <u>e.g.</u>, <u>Beavers v. Saffle</u>, 216 F.3d 918, 925-26 (10th

---

[5](...continued)
probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial'" . . . and (2) that 'had he rejected the State's plea bargain, the outcome of the proceedings "likely would have changed.""" <u>Braun</u>, 190 F.3d at 1188. That statement as to part (2) is similarly in error.

- 14 -

Cir. 2000) (holding petitioner had alleged a sufficient habeas claim based on allegations that his counsel was ineffective and that he would not have changed his plea but for his counsel's mistakes).

In addition, we note that the statement in Braun that a petitioner must prove he would have prevailed at trial was unnecessary to the opinion in that case. The issue before the court was only whether, under AEDPA standards of review, the Oklahoma Court of Criminal Appeals had used a correct standard for determining prejudice. See Braun v. State, 909 P.2d at 790 (denying relief based on state court's conclusion that "we find nothing in the record showing that but for any alleged substandard representation, Petitioner would not have pled nolo contendere"). Our opinion in Braun therefore merely held that the OCCA's resolution of the case – which was itself decided under a correct standard – was not unreasonable.

Finally, while other circuits have considered the strength of the prosecution's case as circumstantial evidence of whether a petitioner would have changed his plea, and therefore whether he was prejudiced, none has held a petitioner must show that the case would likely have failed had it gone to trial. See, e.g., Weeks v. Snyder, 219 F.3d 245, 259-60 (3d Cir. 2000); Witherspoon v. Purckett, 210 F.3d 901, 903-04 (8th Cir. 2000); Warner v. United States, 975 F.2d 1207, 1214 (6th Cir. 1992); United States v. Horne, 987 F.2d 833, 835-36 (D.C.

- 15 -

Cir. 1993); Panuccio v. Kelly, 927 F.2d 106, 109 (2d Cir. 1991); Holmes v. United States, 876 F.2d 1545, 1551 (11th Cir. 1989); Hooper v. Garraghty, 845 F.2d 471, 475-76 (4th Cir. 1988); Iaea v. Sunn, 800 F.2d 861, 865-66 (9th Cir. 1986); Key v. United States, 806 F.2d 133, 138-39 (7th Cir. 1987); United States v. Giardino, 797 F.2d 30, 32 (1st Cir. 1986). Rather, these cases frequently state that the strength of the case that could have been mounted against one pleading guilty to a crime is relevant only because it offers circumstantial evidence of what the petitioner would have done had his counsel not proved to be ineffective. For example, in Hooper, the Fourth Circuit explained that a petitioner's statement that he would have insisted on trial but for his counsel's mistakes, "suffers from obvious credibility problems and must be evaluated in light of the circumstances the defendant would have faced at the time of his decision." 845 F.2d at 475.

Accordingly, in light of the Supreme Court's opinion in Lockhart, our own precedent concerning prejudice in the context of a guilty plea, and the overwhelming weight of authority among the other federal circuits, we hold the district court erred by requiring Miller to prove a reasonable probability existed not only that he would have insisted on trial but for his counsel's mistakes, but also that there was a likelihood that he would have prevailed at trial. Of course, the "assessment [of whether the defendant would have insisted on changing his plea] will depend in large part on a prediction whether the evidence likely would

- 16 -

have changed the outcome of the trial," Hill v. Lockhart, 474 U.S. at 59, but the ultimate issue that the court has to determine is whether the defendant would have changed his plea.

B.  Evidence of Prejudice

In spite of the district court's error in interpreting the standard for showing prejudice, we hold that Miller is not entitled to habeas corpus relief.  The district court adopted the magistrate court's finding that the evidence against Miller would probably have led a jury to convict him on charges of first-degree murder, and thus even if Miller had been informed of the elements of second-degree murder it was highly unlikely he would have risked a lengthier sentence by facing a jury on the first-degree charges.

The district court's decision was supported by the record and was not clearly erroneous.  To begin, the record shows that Miller's plea was based on his belief that he would likely receive a more lenient sentence if he were to plead guilty to second-degree murder than if he were to proceed to trial, and thus the district court rationally inferred that the precise elements of second-degree murder were not material to Miller in making his plea.

Moreover, the district court properly considered the strength of the state's case against Miller as evidence of whether he would have changed his plea.  All of the witness statements – including those by Miller's own family and Miller

himself – indicate that Miller shot and killed Hamilton after their altercation at the Bucket. Although Miller argues that he could have raised viable defenses at trial, we agree with the district court's findings to the contrary.

Miller asserted to the district court that he would have gone to trial in spite of the evidence against him, arguing that he shot Hamilton in self-defense, or, in the alternative, that his level of culpability would at most have supported a conviction for first-degree manslaughter. The district court found that Miller lacked credibility in light of the weakness of the evidence supporting both arguments. The district court found Miller's own testimony in support of his self-defense argument was not believable. During his interview with Lt. White, Miller stated he shot Hamilton in the chest after Hamilton attacked him a second time and cut him with a knife. In his testimony to the district court, however, Miller stated both that he did not remember shooting Hamilton at all, and that he meant to fire only at Hamilton's legs but that Hamilton ducked and was thus struck in the chest. Furthermore, contrary to Miller's statement to the police, the evidence demonstrated that Hamilton was at least twenty feet from Miller when he was killed, that he was armed with only a baseball bat or knife (compared with Miller's gun), and that Miller was walking toward Hamilton and simultaneously firing while Hamilton ran in the opposite direction. Likewise, the autopsy report indicated that Hamilton was shot in the back from a distance. Finally, Miller's

story is undercut by officers who interviewed him after the shooting and who failed to locate injuries other than "a couple of scratches" to corroborate Miller's story that he had been attacked.

The district court also rejected Miller's assertion that he might have argued that his actions would have merited at most a conviction for the lesser offense of first-degree manslaughter. The district court found his representation lacked credibility because Miller most likely could not have established all of the elements of the lesser offense. Oklahoma defines first-degree manslaughter as a homicide "perpetrated without a design to effect death, and in a heat of passion, but in a cruel and unusual manner, or by means of a dangerous weapon." Okla. Stat. Ann. tit. 21, § 711(2). In order to establish "heat of passion" manslaughter, the defendant must show: "1) adequate provocation; 2) passion or emotion such as anger, rage, fear, or terror; 3) a homicide occurring during a state of passion; and 4) the existence of a casual connection between the provocation, passion and homicide." Bryson v. Ward, 187 F.3d 1193, 1208 (10th Cir. 1999) (citing Fairchild v. State, 965 P.2d 391, 399 (Okla. Crim. App. 1998)). A conviction for manslaughter is not appropriate, however, if the homicide occurs after the actor has had a reasonable opportunity to cool down from the provoking event. See id. In this case, the district court conceded Miller might have persuaded a jury to convict him of the lesser offense, but concluded it was more likely that a jury

would have found that Miller had reasonable time to cool off in the ten minutes that elapsed between the initial attack and Hamilton's death. Furthermore, the district court correctly observed that Miller's sentencing exposure for first-degree manslaughter was significantly higher than his recommended sentence under the negotiated plea agreement. See Okla. Stat. Ann. tit. 21 § 715; Barlor v. State, 665 P.2d 318 (Okla. Crim. App. 1983) (affirming sentence of seventy years' imprisonment for first-degree manslaughter). Thus, the district court concluded that Miller would have been unlikely to risk a life sentence on the highly speculative possibility that he would receive a sentence lower than thirty-eight years for first-degree manslaughter.

Finally, the district court considered and rejected Miller's assertion that he was too intoxicated to form the requisite intent to commit first-degree murder. While conceding the facts might have supported this defense, the district court noted that Galbraith himself considered this defense and rejected it because juries are seldom sympathetic to defendants on the basis of claims of voluntary intoxication. Moreover, while the evidence shows that Miller was drinking throughout the day, the district court found that the evidence was not sufficient to show that Miller was "'totally unable to form an intent to kill,' as is required to constitute a defense to murder in the first degree under Oklahoma law." Oklahoma Uniform Jury Instruction – Criminal 2d 8-36; Crawford v. State, 840

P.2d 627, 638 (Okla. Crim. App. 1992). Rather, the evidence shows that Miller was able to drive himself to the Bucket, that he did not seem visibly intoxicated to those around him, and that he could effectively communicate with those around him both before and after the shooting. Moreover, Miller's own statement to the police demonstrates he had the presence of mind following the killing to conceal his gun and to escape detection for approximately three hours before his father persuaded him to turn himself in.

All of the foregoing evidence is supported by the record, and we therefore hold that the district court's determination that Miller would not have gone to trial but for Galbraith's mistakes was not clearly erroneous.

## III. CONCLUSION

We conclude that the district court erred in requiring Miller to show a reasonable probability that he would have prevailed at trial but for his counsel's mistakes. Nevertheless, the district court's conclusion that Miller still would have accepted the plea bargain offered to him even if he had been informed of the "depraved mind" element of second-degree murder was supported by the record and was not clearly erroneous. Therefore, we AFFIRM the district court's denial of Miller's habeas petition.