**F I L E D**

**UNITED STATES COURT OF APPEALS**

**May 23, 2006**

**FOR THE TENTH CIRCUIT**

ROSARIO GARCIA,

        Petitioner-Appellant,

v.

ERASMO BRAVO, Warden,
Guadalupe County Correctional
Facility,

        Respondent-Appellee.

No. 05-2159
(D.C. No. CIV-04-606-WJ/LFG)
(D. N.M.)

**ORDER AND JUDGMENT**[*]

Before **TYMKOVICH**, **McKAY**, and **BALDOCK**, Circuit Judges.

Rosario Garcia, a New Mexico prisoner who pled guilty to fourteen felony

counts of criminal sexual penetration and criminal sexual contact with his oldest

daughter, appeals from the district court's denial of his petition for a writ of

habeas corpus filed pursuant to 28 U.S.C. § 2254. He argued in the state courts

---

[*]    After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist the determination of
this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is
therefore ordered submitted without oral argument. This order and judgment is
not binding precedent, except under the doctrines of law of the case, res judicata,
and collateral estoppel. The court generally disfavors the citation of orders and
judgments; nevertheless, an order and judgment may be cited under the terms and
conditions of 10th Cir. R. 36.3.

and in the federal district court that the counsel who represented him in connection with his guilty plea and the counsel who represented him when he sought to withdraw that plea were both constitutionally ineffective. He continues to make the same arguments on appeal. Exercising jurisdiction under 28 U.S.C. §1291 and § 2253, we affirm.

**I.**

In June 1998, Dolores Garcia, Mr. Garcia's fifteen-year-old daughter, went to Mexico with a youth group. She indicated to her chaperone, Sandy Rodriguez, that her father had sexually abused her. Ms. Rodriguez reported this to Miguel Acosta, who headed the youth group. Mr. Acosta thereafter reported Dolores' accusations to the New Mexico Children, Youth, and Families Department. The Department scheduled her for a Safehouse Interview, during which she described sexual abuse by Mr. Garcia beginning at age four. After this interview, the Department removed Dolores from her parents' home and placed her with her maternal grandmother.

Three mental health counselors, Dr. LaRissa Newell, Dr. Karen Wilbur, and Mary Roe, concluded that Dolores suffered from post traumatic stress disorder (PTSD). Nothing indicated Dolores had been subjected to stressors other than the alleged sexual abuse. Dr. Renee Ornelas examined Dolores and found that although her body was within normal physical limits, the finding did not exclude many forms of sexual abuse.

Eventually, in 2000, Mr. Garcia was charged with sexually abusing Dolores over a period of years. Specifically, he was charged with seven counts of first-degree criminal sexual penetration and nine counts of third-degree criminal sexual contact with a minor, exposing him to a possibility of 162 years' imprisonment. Ron Sanchez represented Mr. Garcia at this time. The State made its first plea offer on August 22, 2000, less than a month before the scheduled trial date. Mr. Garcia rejected the offer, which would have exposed him to a maximum of sixty years' imprisonment. On September 1, the trial judge heard Mr. Garcia's motion to continue the trial in order to obtain an expert witness who could address Dolores' alleged PTSD. The court denied the motion to continue, but stated that a defense expert could sit through the trial and testify based on the evidence presented. After the hearing, the State made a plea offer identical to the first offer. Mr. Garcia initially accepted this second offer, but within a few minutes he changed his mind and rejected it.

Thereafter, Mr. Sanchez interviewed Dolores. During the interview, she described abuse beginning at age four and continuing until high school. After listening to the interview tape, Mr. Garcia concluded that Dolores' testimony was very believable.

Thereafter, Mr. Sanchez asked the prosecutor for another plea offer. Although it was contrary to policy to enter into a plea bargain after a child victim had been interviewed, the prosecution agreed to a plea bargain that contained

more charges than the prior two plea offers. This plea offer had a sentencing cap of seventy-eight years, which reflected the additional charges that the State intended to bring against Mr. Garcia based on Dolores' additional disclosures at her interview with Mr. Sanchez. Mr. Garcia accepted this plea offer and pled guilty to three counts of attempted first-degree criminal sexual penetration, three counts of second-degree criminal sexual penetration, and eight counts of third-degree criminal sexual contact with a minor.[1] During the plea proceedings, Mr. Garcia confirmed that he understood and agreed with the plea agreement, that he was pleading guilty to fourteen felony counts, that the parties had made no agreement as to the sentence, that he understood the rights he was giving up, that he understood the charges facing him, and that his sentence could be from probation to seventy-eight years' imprisonment.

Sometime after his plea, Mr. Garcia discharged Mr. Sanchez and retained Alex Chisholm as counsel. On the day Mr. Garcia was scheduled for sentencing, he moved to withdraw his guilty plea on the ground that it was not knowingly, voluntarily, and intelligently entered. Mr. Garcia argued for withdrawal of the plea because Mr. Sanchez provided ineffective assistance of counsel by failing to obtain a needed expert mental health witness, thereby forcing him to plead guilty. Mr. Garcia also alleged that because Dolores' testimony was convincing,

---

[1]     The plea relieved Mr. Garcia of the possibility that the State would bring additional charges against him with respect to Dolores and another daughter.

Mr. Sanchez's ineffective assistance forced him to plead guilty, although he was innocent. After holding an evidentiary hearing, the state district court denied the motion to withdraw the plea, finding that Mr. Sanchez had interviewed the State's witnesses, including Dolores and the State's experts; that he had met with Mr. Garcia numerous times and discussed the possible testimony of the State's witnesses and the possible outcome of the trial; that Mr. Garcia had full knowledge of the State's case at the time he entered his plea; that Mr. Sanchez's failure to obtain an expert witness did not affect Mr. Garcia's decision to plead guilty; and that the plea was knowingly and voluntarily entered. Aplt. App., Vol. 1 at 254-56. The court sentenced Mr. Garcia to seventy-eight years' imprisonment with a twenty-eight year suspended sentence. The New Mexico Court of Appeals affirmed the denial of the motion to withdraw the plea, holding that Mr. Garcia's plea was knowing and voluntary and that he failed to show ineffective assistance of counsel. *Id.* at 44-45, 58-63. The New Mexico Supreme Court denied a writ of certiorari. *State v. Garcia*, 42 P.3d 842 (N.M. 2002) (table).

Mr. Garcia filed a petition for a writ of habeas corpus in state district court alleging that both Mr. Sanchez and Mr. Chisholm provided ineffective assistance of counsel. After holding an evidentiary hearing, at the direction of the New Mexico Supreme Court, the state district court denied habeas relief, ruling that Mr. Sanchez's performance was not deficient. Aplt. App., Vol. 1 at 165.

Also, the court decided that Mr. Garcia was not prejudiced by Mr. Sanchez's performance because Mr. Garcia had rejected two prior plea offers, the State intended to bring additional charges against him, Mr. Garcia admitted Dolores' interview statements were credible and he could be convicted based on that testimony, the indictment exposed him to 168 years' imprisonment for which much of the time was mandatory, Dolores had been diagnosed with PTSD and various witnesses' testimony would support that diagnosis, Mr. Garcia had failed two polygraph tests, the State had a strong case for conviction, and Mr. Garcia waited over a month to move to withdraw his plea even though he had appeared in court less than a week after the plea. *Id.* at 165-66, 167. Although the court decided that Mr. Chisholm's performance was deficient, it concluded that proper performance would not have resulted in the court allowing the withdrawal of the guilty plea. *Id.* at 166. The New Mexico Supreme Court denied a writ of certiorari.

Mr. Garcia then filed a federal petition for writ of habeas corpus, again arguing that both Mr. Sanchez and Mr. Chisholm provided ineffective assistance of counsel. After making thorough findings and a recommendation, the magistrate judge recommended that habeas relief be denied. After thoroughly considering and rejecting Mr. Garcia's objections to the magistrate judge's recommendation, the district court adopted the recommendation and denied relief. This appeal followed.

## II.

Ineffective assistance of counsel claims "involve mixed questions of law and fact for purposes of review under § 2254." *Fields v. Gibson*, 277 F.3d 1203, 1215 (10th Cir. 2002) (quotation omitted).  When a claim has been adjudicated on the merits in state court, as it has been here, we will not grant relief under § 2254 unless the state court's decision was "contrary to, or involved an unreasonable application of" Supreme Court precedent or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(1), (2).  We presume a state court's factual findings are correct unless a defendant can show incorrectness of the findings by clear and convincing evidence.  *Id.* § 2254(e)(1). "We review de novo the district court's legal analysis of the state court decision."  *Turrentine v. Mullin*, 390 F.3d 1181, 1189 (10th Cir. 2004), *cert. denied*, 125 S. Ct. 2544 (2005).

## III.

To prevail on an ineffective assistance of counsel claim, a defendant must show both that counsel's performance was deficient and that the deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  Under the first prong of the test, "counsel's representation [must] f[a]ll below an objective standard of reasonableness." *Id.* at 688.  Under the second prong, there "must . . . [be] a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.

A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

"[T]he two-part *Strickland* . . . test applies to challenges to guilty pleas based on ineffective assistance of counsel." *Hill v. Lockhart*, 474 U.S. 52, 58 (1985). "[T]o satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.* at 59.

> When assessing "prejudice," a court may consider the likelihood that the correction of an alleged error "would have led counsel to change his recommendation as to the plea. This assessment, in turn, will depend in large part on a prediction whether the [error] likely would have changed the outcome of a trial."

*Fields*, 277 F.3d at 1215 (quoting *Hill*, 474 U.S. at 59).

## A. Mr. Sanchez

Mr. Garcia argues that his guilty plea was not entered voluntarily and intelligently because Mr. Sanchez provided ineffective assistance of counsel. *See Romero v. Tansy*, 46 F.3d 1024, 1033 (10th Cir. 1995) (observing that ineffective assistance of counsel can render plea involuntary). Mr. Garcia argues that Mr. Sanchez was ineffective in eight separate ways; specifically, that Mr. Sanchez: (1) failed to obtain a mental health expert to challenge the State's expert evidence concerning Dolores' alleged PTSD; (2) failed to obtain a consulting medical expert; (3) failed to interview all of the State's proposed witnesses; (4) did not competently question Dr. Ornelas concerning her physical

examination of Dolores; (5) did not ask the trial court for an independent psychological examination of Dolores; (6) did not explain to Mr. Garcia the extent, significance, or potential use of the inconsistencies in Dolores' allegations; (7) led Mr. Garcia to believe that if he pled guilty he would have a chance for probation; and (8) should have objected at the plea hearing because the trial court failed to (a) advise Mr. Garcia of the nature of the charges or ensure he understood the charges and (b) adequately establish the factual basis for the plea on the record.

We need not address whether Mr. Sanchez's performance was deficient, because it is easier to decide the ineffectiveness claim on the prejudice component only. *See Strickland*, 466 U.S. at 697 ("[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies."). Regardless of whether Mr. Sanchez's performance was deficient, Mr. Garcia has failed to show that prejudice resulted from Mr. Sanchez's performance.

Mr. Garcia argues that if Mr. Sanchez had done all eight things listed above, there is a reasonable probability that he would have gone to trial instead of accepting a plea offer that exposed him to seventy-eight years' imprisonment. He maintains that the two main reasons he pled guilty were his lack of a mental health expert to counter the PTSD diagnosis and Dolores' credibility in her interview with Mr. Sanchez. If Mr. Sanchez had properly represented him,

Mr. Garcia contends he would have understood (1) that the inconsistencies in Dolores' various statements could have been used to impeach her; (2) that a mental health expert could have exposed any flaws in the prosecution's mental health testimony; (3) that a defense medical expert could have explained that Dolores' normal physical examination contradicted her allegations that Mr. Garcia had repeatedly raped her; and (4) that a plea would result in a lengthy prison sentence. To further support his prejudice argument, Mr. Garcia points out that he had consistently maintained that he was innocent and that he had rejected two more favorable plea agreements. In addition, Mr. Garcia believes that the evidence against him was underwhelming.

"[T]he strength of the government's case against [Mr. Garcia] should be considered in evaluating whether [he] really would have gone to trial if he had received adequate advise from his counsel." *Miller v. Champion*, 262 F.3d 1066, 1069 (10th Cir. 2001). As both the state and federal district courts, in this case, recognized, the State's case against Mr. Garcia was strong. Aplt. App., Vol. 1 at 166; *id.*, Vol. 3 at 719. Even he apparently thought so, as reflected by his belief that Dolores' testimony was believable and by his request for another plea offer, even though he previously had rejected two more favorable offers. Nothing in the record indicated that the consistent PTSD diagnoses could be supported by anything but sexual abuse. And Mr. Garcia presented no convincing reasons for Dolores to fabricate accusations against him.

Additionally, the plea provided a benefit to Mr. Garcia. In exchange for his guilty plea, the State agreed not to bring additional felony charges against Mr. Garcia with respect to Dolores and another daughter. Also, Mr. Garcia's sentence exposure was significantly less with the plea. The record of the plea colloquy makes clear that the trial court fully informed Mr. Garcia of the possible sentence. And Mr. Garcia acknowledged that he understood the possible sentence. Furthermore, he could have asked to withdraw his guilty plea when he appeared before the trial court at a hearing on conditions for release six days after he pled guilty. Instead, he waited a month before doing so.[2]

Under the totality of the factual circumstances surrounding the plea, there is not a reasonable probability that but for Mr. Sanchez's alleged failures, Mr. Garcia would have decided not to plead guilty and instead would have gone to trial. *See Hill*, 474 U.S. at 59; *Miller*, 262 F.3d at 1072. Mr. Garcia's later regret at pleading guilty is not sufficient for constitutional error. Accordingly, we conclude that the state court's determination that Mr. Garcia was not prejudiced by Mr. Sanchez's defense was not an unreasonable application of *Hill*. *See* 28 U.S.C. § 2254(d)(1).

---

[2]    Mr. Garcia claims that he was suffering from a major depression at the time he accepted the plea agreement and the depression affected his ability to determine what was in his best interests. Even if he was suffering from depression and stress, that does not show that his plea was involuntary. *Miles v. Dorsey*, 61 F.3d 1459, 1470 (10th Cir. 1995).

## B. Mr. Chisholm

Mr. Garcia next argues that Mr. Chisholm provided ineffective assistance during the proceedings on Mr. Garcia's motion to withdraw his guilty plea. Specifically, Mr. Garcia argues that Mr. Chisholm failed to seek a continuance, did not retain experts, did not seek an independent mental health examination of Dolores, did not present the inconsistencies in Dolores' statements, failed to argue the trial court had not informed him of the nature of the charges or ensured that there was a factual basis for the plea, relied on a baseless theory that Dolores was taking a hallucinatory prescription medication, and informed the state court that the prosecution had a compelling case against Mr. Garcia. The state district court found that Mr. Chisholm's performance was objectively unreasonable, but held that his deficient performance did not prejudice Mr. Garcia. Like the federal district court, we defer to the state district court's determination that Mr. Chisholm's performance was deficient. We therefore consider only whether Mr. Chisholm's deficient performance resulted in prejudice.

Mr. Garcia believes that if Mr. Chisholm's performance had not been deficient there is a reasonable probability that the New Mexico courts would have permitted him to withdraw his guilty plea. We disagree. Even if Mr. Chisholm had performed as Mr. Garcia asserts he should have, there is not a reasonable probability a state court would have permitted Mr. Garcia to withdraw his guilty plea. The state district court, on habeas corpus review, heard evidence from

defense experts, declined to allow an independent mental health examination of Dolores, knew of the inconsistencies in Dolores' statements, heard the State's evidence against Mr. Garcia, and considered the factual basis for the plea. In other words, the court considered the evidence to support Mr. Garcia's complaints against Mr. Sanchez. After doing so, the court found no prejudice. We conclude the state court's determination was not an unreasonable application of *Strickland* and was not based upon an unreasonable determination of the facts in light of the evidence before that court. *See* 28 U.S.C. § 2254(d)(1), (2).

**IV.**

The judgment of the district court is AFFIRMED.

Entered for the Court

Bobby R. Baldock
Circuit Judge