**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Bradley HARDY, Jr., Defendant–
Appellant.**

No. 94–2820.

United States Court of Appeals,
Seventh Circuit.

Argued Nov. 29, 1994.

Decided April 5, 1995.

Christina McKee, Asst. U.S. Atty. (argued), Office of the U.S. Atty., Indianapolis, IN, for plaintiff-appellee.

William H. Dazey, Jr., (argued), Qualkinbush & Dazey, Indianapolis, IN, for defendant-appellant.

Before CUMMINGS, ESCHBACH and KANNE, Circuit Judges.

KANNE, Circuit Judge.

Bradley Hardy's long criminal career ended last year, when a jury convicted him of possessing an unregistered sawed-off shotgun and of possessing a firearm while a convicted felon. The judge sentenced Hardy as an armed career criminal under U.S.S.G. § 4B1.4 and 18 U.S.C. § 924(e) and sent him to prison for 300 months. Hardy appeals; we affirm both his conviction and his sentence.

## I.  Background

On November 25, 1993, somebody shot and killed Darrel Lewis. While investigating the murder, police received information strongly suggesting that Hardy had been involved. A woman in whose car Hardy had ridden that night told police that she had seen Hardy at the site of the shooting and that he had been carrying a gun. Hardy had also told her that he was suspected of shooting a man. Unsurprisingly, the Indianapolis police decided to question Hardy about the murder.

Detective Edmund Stamm learned that Hardy might be staying at an Indianapolis motel, a Dollar Inn. So on November 27th, Stamm and his partner, Detective Norman Matthews, went to the motel. They intended to question Hardy, but not necessarily to arrest him, and they had no search warrant.[1] They knew that Hardy had numerous arrests and several convictions for violent felonies, including robbery while armed with a sawed-off shotgun, and that he was reputed to frequently rob drug dealers to get cash to feed his own drug habit. At the motel, Stamm and Matthews first talked to the manager, who told them Hardy was indeed staying there, though the room in which he was staying was rented under another person's name. Stamm, having been told that Hardy was probably armed, then called for backup from other Indianapolis police officers and planned how to approach Hardy.

Not wanting to alert Hardy to the presence of the police, Stamm asked the manager to walk past the room in which Hardy was staying and report if there were any children in the room and if the window drapery or door were open. The manager reported that the door was closed and the drapery was open, but she had not seen anything through the window. Police detained and questioned a man who left the motel room, who said that Hardy was inside. Stamm then got a passkey from the manager and approached the room, followed by Matthews and two uniformed police officers. Stamm himself saw that the curtain was open several inches. He ducked past the window and stood between the window and the door. The other officers also crouched down by the wall and below the window. Stamm peered into the room through the gap in the curtains and saw two beds, with Hardy sitting on the bed farther away from the door. On that bed, beside Hardy, was a sawed-off shotgun. Two women and three children were also in the room.[2]

---

1. Another man was ultimately charged with the murder of Lewis.

2. The two women turned out to be Hardy's sister and Hardy's girlfriend. The children were Hardy's sister's.

Stamm loudly announced that he was a police officer and almost immediately used the passkey to enter the room, followed by Matthews and the two other police officers. Stamm was unsure at trial if he had knocked before entering the room. The police arrested Hardy and seized the shotgun. After being informed of his rights, Hardy waived them and admitted that the shotgun was his.

Before trial, Hardy moved to suppress all evidence seized, arguing that the entrance and search of his motel room had been illegal because they were made without a search warrant. The district court held a hearing and denied the motion. A jury convicted Hardy of both charges. The presentence report suggested that Hardy, because of his prior record, should be sentenced as an armed career criminal, under 18 U.S.C. § 924(e) and U.S.S.G. § 4B1.4. The judge agreed and sentenced Hardy to 300 months in prison.

## II. Analysis

■ Hardy argues that the trial judge erred in denying Hardy's motion to suppress evidence. He says the police should have obtained a search warrant before entering the motel room. Hardy and the government agree that this Circuit reviews a district court's denial of a motion to suppress for clear error. *United States v. Foxworth*, 8 F.3d 540, 543 (7th Cir.1993), *cert. denied,* — U.S. ——, 114 S.Ct. 1414, 128 L.Ed.2d 85 (1994); *see also United States v. Burns*, 37 F.3d 276, 278 n. 2 (7th Cir.1994) (collecting cases).

■ The Fourth Amendment generally forbids warrantless searches of a person's home. *Mincey v. Arizona*, 437 U.S. 385, 390, 98 S.Ct. 2408, 2412, 57 L.Ed.2d 290 (1978). A motel room occupied as a temporary residence receives the same constitutional protection. *Foxworth*, 8 F.3d at 544. However, the Supreme Court has carved out several exceptions to the warrant requirement, including where "exigent circumstances" exist at the time of search. *Mincey*, 437 U.S. at 392–93, 98 S.Ct. at 2413; *United States v. Salava*, 978 F.2d 320, 324 (7th Cir.1992). Exigent circumstances exist where there is "a compelling need for official action and no

time to secure a warrant;" police may then enter and search a residence without first getting a warrant. *Salava*, 978 F.2d at 324 (quoting *Michigan v. Tyler*, 436 U.S. 499, 509, 98 S.Ct. 1942, 1949, 56 L.Ed.2d 486 (1978)).

■ We agree with the district court that exigent circumstances permitted the search of Hardy's motel room. Exigent circumstances exist in many situations; one well-recognized situation is when police reasonably believe that their safety or the safety of others may be threatened. *United States v. Madewell*, 917 F.2d 301, 305 (7th Cir.1990). Stamm and the other police officers reasonably believed that Hardy posed a threat both to them and to others. Hardy was suspected in a recent murder, and he knew he was a suspect. He had a history of violent crimes committed with firearms, he was known to have been recently armed with a handgun, and he had an illegal sawed-off shotgun in easy reach. The shotgun posed a particular threat to the officers: a sawed-off shotgun, which does not need to be carefully aimed to hit its target and which carries a powerful charge, can very easily kill at close range. If fired, the shotgun might also have injured the women or children in the room with Hardy. Thus, there was undoubtedly a compelling need for Stamm and the other police officers to immediately enter the motel room in which Hardy was staying.

■ Moreover, the police did not have enough time to get a warrant. They had detained a man leaving the motel room, whom Hardy might have been expecting to come back to the room. From that man's absence, or from simply looking out the window, Hardy might have realized that the police had closed in on him. If the police had waited, Hardy might have taken dangerous action, such as grabbing the shotgun and threatening the police or the other occupants of the room. The police acted correctly by acting immediately. Therefore, both prongs of the exigent circumstances exception to the warrant requirement were satisfied, and the

district court made no error in denying Hardy's motion to suppress.[3]

■ Hardy further argues that due process requires that he receive formal notice prior to trial that he could be sentenced as an armed career criminal. Hardy had numerous violent felony convictions: the court based its increased sentence on three of them, for battery, attempted robbery, and attempted burglary. Hardy does not contest those convictions, and he does not claim that they do not support his sentence adjustment. Hardy admits that his argument is "without any case authority" to support it. In response to the district court's query as to whether he had authority for this and related propositions, Hardy's counsel replied:

> None at all. I have authority against each of those propositions, your Honor. Those are a list of colorable claims made in other circuits that have been rejected in each of those circuits in which they were made, your Honor.

Instead, counsel argued for a change in the law, interpreting due process to require formal notice prior to trial. Nonetheless, the district court rejected his argument, and while we appreciate counsel's forthright comment, we also reject his theory. We review the district court's interpretation of the statute and the Sentencing Guidelines *de novo. United States v. Young,* 34 F.3d 500, 504 (7th Cir.1994).

■ Neither § 924(e) nor U.S.S.G. § 4B1.4 require that any notice be given a defendant subject to an increased sentence as an armed career criminal. Thus, only notice necessary to satisfy constitutional requirements must be given. Due process requires that a defendant receive reasonable notice and an opportunity to be heard regarding a sentence increase for recidivism. *Oyler v. Boles,* 368 U.S. 448, 452, 82 S.Ct. 501, 504, 7 L.Ed.2d 446 (1962); *United States v. Hudspeth,* 42 F.3d 1015, 1024 n. 17 (7th Cir.1994) (en banc); *United States v. Belanger,* 970 F.2d 416, 418 (7th Cir.1992).

Although he did not receive *formal* notice until the day of sentencing that he could be sentenced as an armed career criminal, Hardy received actual notice much earlier. Hardy and the government both agree that during plea negotiations before trial, the government and Hardy discussed that he could be sentenced as an armed career criminal. The government at that time informed Hardy upon which prior convictions it would rely to secure a sentence increase. In fact, at sentencing Hardy and the government agreed that one reason that Hardy had refused to plead guilty was the substantially increased penalties he faced as an armed career criminal.

■ We conclude that Hardy received constitutionally adequate notice. First, he received actual notice long before the trial. Second, the pre-sentence report (PSR) proposed a § 4B1.4 sentence adjustment and specified the prior convictions on which the adjustment would be based (as well as other convictions on which the adjustment might have been based). Hardy received the PSR well before sentencing: it was not a surprise sprung on him just before sentencing. In fact, he argued in detail before sentencing against the § 4B1.4 sentence increase, on much the same grounds he does today. Third, the government filed an additional notice just before actual sentencing formally notifying Hardy that he could be sentenced as an armed career criminal. Thus, Hardy received more than adequate notice of the possibility of an enhanced sentence. *See United States v. Craveiro,* 907 F.2d 260, 264 (1st Cir.) (rejecting defendant's argument that due process required pre-trial notice of possibility of sentence increase under § 924(e)), *cert. denied,* 498 U.S. 1015, 111 S.Ct. 588, 112 L.Ed.2d 593 (1990). Even had Hardy not received adequate notice, any error would be harmless because Hardy does not contest the underlying convictions or their applicability. *Craveiro,* 907 F.2d at 265.

---

**3.** Hardy also argues that Stamm did not knock and announce himself before entering the hotel room, as is generally required. Stamm was actually uncertain about whether he knocked, and he did announce himself as a police officer before entering. Regardless, the same exigent circumstances also excuse a failure to knock and announce. *United States v. Buckley,* 4 F.3d 552, 558 (7th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1084, 127 L.Ed.2d 400 (1994).

Furthermore, Hardy had ample opportunity to contest the earlier convictions and their applicability to his sentence, although he has never contested either. The procedures given Hardy more than satisfied due process requirements, and we will not gratuitously add requirements such as pre-trial formal notice. We AFFIRM Hardy's conviction and sentence.