**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

FILED
**United States Court of Appeals
Tenth Circuit**

**July 7, 2022**

**Christopher M. Wolpert
Clerk of Court**

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

JASON REED,

    Defendant - Appellant.

No. 21-2073

_____

**Appeal from the United States District Court
for the District of New Mexico
(D.C. No. 1:18-CR-01576-KWR-1)**
_____

Todd B. Hotchkiss, Albuquerque, New Mexico, for Defendant-Appellant.

Emil J. Kiehne, Assistant United States Attorney (Fred J. Federici, United States Attorney, with him on the brief), Albuquerque, New Mexico, for Plaintiff-Appellee.
_____

Before **TYMKOVICH**, Chief Judge, **BALDOCK**, and **ROSSMAN**, Circuit Judges.
_____

**BALDOCK**, Circuit Judge.
_____

Defendant Jason Reed pleaded guilty to being a felon in possession of a firearm. At sentencing, the district court concluded Defendant's previous convictions for drug distribution qualified him for enhanced criminal penalties under the Armed Career Criminal Act (ACCA). That statute mandates a 15-year minimum sentence for

unlawful firearm possession when the offender has three or more previous convictions for serious drug offenses "committed on occasions different from one another." 18 U.S.C. § 924(e)(1). The district court applied the ACCA enhancement and sentenced Defendant to 15 years' imprisonment—the mandatory minimum. Defendant makes three challenges on appeal. First, he claims his guilty plea was unknowing or involuntary because his counsel erroneously advised him that the ACCA was unlikely to apply. Second, he argues the district court lacked the power to decide whether his prior federal drug-trafficking convictions qualified as ACCA predicate felonies. Third, he alleges he was given insufficient notice that the ACCA might apply to him. Exercising jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a), we affirm.

## I.

Defendant was previously convicted of several felonies. In 2004, he was convicted in federal court of four felonies: three counts of distributing a mixture containing cocaine base and one count of disposing a firearm to a convicted felon. Even though the four convictions were contained in a single judgment, each conviction was—according to the judgment—concluded on a different date. A year later, Defendant was convicted in state court of trafficking cocaine.

The present appeal arises out of Defendant's more recent criminal activity. In September 2017, Defendant knowingly brought a handgun and several rounds of ammunition to an apartment in Farmington, New Mexico. A grand jury indicted Defendant for being a felon in possession of a firearm and ammunition. 18 U.S.C. § 922(g)(1). Initially, Defendant wanted to go to trial. But it soon became apparent

2

that he was unlikely to obtain an acquittal: a laboratory found Defendant's DNA on the handgun and Defendant's initial trial counsel (referred to throughout as "trial counsel") was unable to locate any witness to support Defendant's version of events.

The Government offered Defendant a plea agreement. Among other things, the agreement stated that the maximum prison sentence Defendant could receive was 10 years, unless the district court determined he was an armed career criminal under the ACCA, in which case his minimum prison sentence would be 15 years and his maximum sentence would be life. The agreement also informed Defendant that "regardless of any of the parties' recommendations, the Defendant's final sentence is solely within the discretion of the Court." Trial counsel advised Defendant about whether he should accept the Government's plea agreement. Given Defendant's prior convictions, trial counsel worried Defendant might qualify for a sentencing enhancement under the ACCA, and he discussed that issue with Defendant. But trial counsel's advice was flawed. As discussed in further detail below, trial counsel mistakenly believed Defendant did not have the requisite number of felonies for an ACCA enhancement, and trial counsel advised Defendant based on this erroneous belief. Trial counsel, however, was careful not to promise Defendant that the ACCA would not apply. Defendant entered the plea agreement.

At his change-of-plea hearing, Defendant was once again reminded of the possibility of an ACCA enhancement and the consequences associated with pleading guilty. Echoing the plea agreement, the prosecutor reminded Defendant that he faced a maximum of 10 years' imprisonment unless the district court determined that he was

3

an armed career criminal, in which case he would face a mandatory minimum term of 15 years' imprisonment and a maximum sentence of life imprisonment. Defendant acknowledged that he understood the charge and the maximum penalties that go along with it. He also acknowledged that, in the event he received a sentence he did not expect, he would be unable to withdraw his guilty plea. Additionally, Defendant agreed that the factual basis of his offense, as set forth in the plea agreement, was true and accurate, and that he was pleading guilty because he was in fact guilty. He also indicated that no one had made any promises (other than those in the plea agreement) to encourage him to plead guilty. Defendant then pleaded guilty.

The United States Probation Office issued Defendant's Presentence Investigation Report (PSR) on November 26, 2019. Based on Defendant's previous convictions—specifically, Defendant's three federal drug-trafficking convictions—the PSR concluded Defendant was subject to an enhanced sentence under the ACCA. *See* 18 U.S.C. § 924(e)(1) (imposing a 15-year mandatory minimum sentence when an 18 U.S.C. § 922(g) defendant has three previous convictions for serious drug offenses committed on "occasions different from one another"). Because the PSR's ACCA finding directly contradicted trial counsel's advice, Defendant obtained new counsel and moved to withdraw his guilty plea. He argued that his guilty plea was unknowing or involuntary because trial counsel's erroneous advice constituted ineffective assistance of counsel.

The district court held an evidentiary hearing on the motion. Trial counsel testified at the hearing, explaining how he reached the conclusion that Defendant was

4

unlikely to receive an ACCA enhancement. According to his testimony, trial counsel reviewed Defendant's prior federal and state judgments and estimated that, at most, Defendant had two ACCA predicate felonies: one for the state drug distribution conviction and one for the three federal drug distribution convictions contained in a single judgment. Trial counsel's error was rooted in the erroneous belief that convictions contained in a single judgment qualify as one predicate felony for ACCA purposes. *See United States v. Green*, 967 F.2d 459, 460–61 (10th Cir. 1992) (holding an ACCA enhancement is proper even if the three prior convictions were the result of a single judicial proceeding). Explaining how he reached this conclusion, trial counsel testified:

> After looking at [Defendant]'s discovery, the drug convictions alleged in it, and with what knowledge I had of Tenth Circuit case law at the time, I thought that this document, this judgment, would count as one conviction, even though it alleged more than one crime for a drug offense. And I was partly informed, in my reaching that decision, by State law, there's a State case called State v. Linam, which deals with habitual offender applications and enhancement of sentence. It's an old New Mexico Supreme Court case from the 1980s. And it provided that in order for somebody to be enhanced as an habitual offender, they needed to commit a crime and be convicted, commit a crime and be convicted, and commit a crime and then be convicted, in order for the habitual to be applied.

In advising Defendant about the plea agreement, trial counsel anticipated Defendant was unlikely to receive an ACCA enhancement, but he never promised Defendant that he would be ineligible for such an enhancement. Defendant also testified at the evidentiary hearing. He testified that trial counsel informed him that he did not believe Defendant would be considered an armed career criminal. According to Defendant, trial counsel told him that the ACCA language contained in the plea agreement was

5

form language that he did not need to worry about. Defendant testified that he relied on trial counsel's opinion in deciding to accept the plea agreement and claimed that he would have gone to trial but for counsel's erroneous advice that the ACCA would not apply.

The district court denied Defendant's motion to withdraw his guilty plea. Applying *Strickland v. Washington*'s two-part test for ineffective assistance of counsel, the district court held (1) trial counsel's performance was not constitutionally ineffective and (2) Defendant failed to demonstrate he suffered prejudice as a result of the allegedly ineffective assistance of counsel. The district court, therefore, rejected Defendant's claim that trial counsel's performance rendered his guilty plea unknowing or involuntary.

After the resolution of Defendant's motion, Defendant filed objections to the PSR. He argued that the district court lacked authority to find his prior convictions were serious drug offenses "committed on occasions different from one another," 18 U.S.C. § 924(e)(1), because facts that increase the mandatory minimum sentence must be submitted to the jury and found beyond a reasonable doubt. *Alleyne v. United States*, 570 U.S. 99, 108 (2013). The district court overruled Defendant's objections and imposed ACCA's mandatory minimum sentence.

## II.

Defendant's first claim on appeal is the district court reversibly erred by concluding his guilty plea was knowing and voluntary despite trial counsel's erroneous advice about the ACCA's application. Defendant argues his trial counsel's advice

6

"was not within the range of competence demanded of attorneys in criminal cases," rendering his subsequent decision to plead guilty unknowing or involuntary. *United States v. Carr*, 80 F.3d 413, 416 (10th Cir. 1996) (citing *Hill v. Lockhart*, 474 U.S. 52, 56 (1985); *McMann v. Richardson*, 397 U.S. 759, 771 (1970)).

At the outset, it is not immediately apparent that Defendant's current argument is the same one he made before the district court. In his district court briefing, Defendant at times argued his guilty plea was unknowing or involuntary because of counsel's deficient performance, *see Hill*, 474 U.S. at 56, and at other times argued counsel's deficient performance provided a "fair and just reason" for withdrawing his guilty plea, Fed. R. Crim. P. 11(d)(2)(B). We treat these as separate claims. *Compare Carr*, 80 F.3d at 417–19 (analyzing the voluntariness of defendant's guilty plea in light of counsel's allegedly deficient performance), *with id.* at 419–21 (considering counsel's allegedly deficient performance as a factor in reviewing the district court's denial of a motion to withdraw a guilty plea). After reviewing Defendant's opening brief, we agree with the Government that the only issue before us is whether trial counsel's allegedly defective performance invalidated Defendant's guilty plea. To the extent Defendant argued before the district court that there was a "fair and just reason" for withdrawing his plea, Fed. R. Crim. P. 11(d)(2)(B), he waived that argument on appeal by failing to raise it in his opening brief. *E.g.*, *Sawyers v. Norton*, 962 F.3d 1270, 1286 (10th Cir. 2020). Thus, the discrete issue before us is whether trial counsel's allegedly defective performance rendered Defendant's guilty plea unknowing or involuntary—an issue we review de novo. *Carr*, 80 F.3d at 416.

Defendant is effectively raising an ineffective assistance of counsel claim on direct appeal—a practice we generally disfavor. *See, e.g.*, *Massaro v. United States*, 538 U.S. 500, 504–05 (2003); *United States v. Galloway*, 56 F.3d 1239, 1240 (10th Cir. 1995) (en banc). Accordingly, we must first consider whether it is appropriate for us to address this issue. "[I]n most cases a motion brought under [28 U.S.C.] § 2255 is preferable to direct appeal for deciding claims of ineffective assistance." *Massaro*, 538 U.S. at 504. But there are exceptions to this rule. "We recognize a narrow exception for the 'rare claims which are fully developed in the record and allow such claims to be brought either on direct appeal or in collateral proceedings.'" *United States v. Trestyn*, 646 F.3d 732, 741 (10th Cir. 2011) (quoting *Galloway*, 56 F.3d at 1242) (cleaned up). Here, the district court held an evidentiary hearing on Defendant's motion to withdraw his guilty plea where trial counsel and Defendant testified about trial counsel's performance and issued an opinion holding trial counsel was not constitutionally ineffective. Given these circumstances, the factual record is sufficiently developed for us to entertain Defendant's ineffective-assistance claim on direct appeal. *See United States v. Gordon*, 4 F.3d 1567, 1570 (10th Cir. 1993); *Carr*, 80 F.3d at 416 n.3.

"We review a challenge to a guilty plea based on a claim of ineffective assistance of counsel using the two-part test announced in *Strickland v. Washington*, 466 U.S. 668 (1984)." *Gordon*, 4 F.3d at 1570 (citing *Hill*, 474 U.S. at 58). Under this test, Defendant must show (1) his counsel's performance "fell below an objective standard of reasonableness," *Strickland*, 466 U.S. at 688, and (2) counsel's deficient

8

performance resulted in prejudice, *id.* at 692.  Because we ultimately hold Defendant cannot establish prejudice, we decline to consider whether trial counsel's performance fell below an objective standard of reasonableness.  *Id.* at 697 ("[T]here is no reason for a court . . . to address both components of the inquiry if the defendant makes an insufficient showing on one.").

"To show prejudice in the guilty plea context, the defendant must establish that 'there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and insisted on going to trial.'"  *Gordon*, 4 F.3d at 1570 (quoting *Hill*, 474 U.S. at 59).  A defendant's mere allegation that, but for counsel's ineffective assistance regarding application of the ACCA to his sentencing calculation, he would have insisted on going to trial is ultimately insufficient to establish prejudice.  *Id.* at 1571 (citing *United States v. Arvanitis*, 902 F.2d 489, 494 (7th Cir. 1990)).  When conducting the prejudice inquiry, courts "will often review the strength of the prosecutor's case as the best evidence of whether defendant in fact would have changed his plea and insisted on going to trial."  *Miller v. Champion*, 262 F.3d 1066, 1072 (10th Cir. 2001) (citing *Hill*, 474 U.S. at 59).  "It is not necessary for the defendant to show that he actually would have prevailed at trial, although the strength of the government's case against the defendant should be considered in evaluating whether the defendant really would have gone to trial if he had received adequate advice from his counsel."  *Id.* at 1069.  Defendant cannot establish prejudice for two reasons: (1) Defendant pleaded guilty after being repeatedly informed that he could receive an ACCA

enhancement, and (2) the circumstances do not suggest Defendant would have gone to trial absent trial counsel's erroneous advice.

First, Defendant was repeatedly informed, prior to pleading guilty, that he was potentially subject to ACCA and a mandatory minimum 15 years' imprisonment. The plea agreement said: "The Defendant understands that the maximum penalty provided by law for this offense is imprisonment for a period of up to 10 years; unless defendant is determined to be an armed career criminal, then imprisonment for not less than 15 years up to life." And while advising Defendant about the offered plea agreement, trial counsel "discussed whether [Defendant] might be determined to be an armed career criminal," but erroneously advised him that the ACCA would not apply. Furthermore, at the plea colloquy the Government again reminded Defendant that if he "is determined to be an armed-career criminal," "he faces . . . a mandatory term of 15 years' imprisonment up to life." Additionally, Defendant knew, from his plea agreement, that his "final sentence [was] solely within the discretion of the Court." After repeated warnings that he might be adjudicated an armed career criminal and the consequences of such a determination, Defendant indicated at the plea colloquy that he understood "the charge and the maximum penalties that go along with it." He also acknowledged that he would be unable to withdraw his plea if he received a sentence he did not expect.

Second, the other factual circumstances, including the strength of the prosecution's case and the benefits of pleading guilty, undercut any assertion by Defendant that he would have insisted on trial absent trial counsel's allegedly

erroneous advice. *See Miller*, 262 F.3d at 1072. After Defendant told trial counsel that he wanted to go to trial, trial counsel sent an investigator to Farmington to locate witnesses who could support Defendant's version of events. But none were found. Shortly thereafter, a laboratory found Defendant's DNA on the handgun. In light of these developments, trial counsel advised Defendant about the plea agreement. Defendant's assertion that he would have otherwise insisted on trial "suffers from an obvious credibility problem . . . in light of the circumstances the defendant would have faced at the time of his decision"—namely, his weakening defense. *Id.* at 1074 (quoting *Hooper v. Garraghty*, 845 F.2d 471, 475 (4th Cir. 1988)). Finally, Defendant benefitted from his guilty plea even as an armed career criminal because it lowered his guideline sentence from 188–235 months' imprisonment to 180 months' imprisonment. Appellee's Answer Br. 7.

Given these circumstances, defendant's assertion that absent trial counsel's erroneous advice he would have gone to trial is insufficient to establish prejudice. *Gordon*, 4 F.3d at 1571; *see also, e.g.*, *United States v. Hamilton*, 510 F.3d 1209, 1216–17, 1216 n.3 (10th Cir. 2007); *United States v. Silva*, 430 F.3d 1096, 1099–1100 (10th Cir. 2005); *United States v. Cain*, 309 F. App'x 272, 273 (10th Cir. 2009) (unpublished). Because Defendant cannot establish prejudice from his trial counsel's allegedly defective representation, we conclude Defendant entered the guilty plea knowingly and voluntarily. *See Carr*, 80 F.3d at 419.

**III.**

Defendant's second claim on appeal is the district court lacked the power to decide whether his prior convictions were "committed on occasions different from one another," 18 U.S.C. § 924(e)(1), because a jury must find facts which increase a defendant's mandatory minimum sentence. *See Alleyne*, 570 U.S. at 111–12. The Government asks us to enforce Defendant's appellate waiver on this issue. In deciding whether an appellate waiver is enforceable, we first ask "whether the disputed appeal falls within the scope of the waiver of appellate rights." *United States v. Hahn*, 359 F.3d 1315, 1325 (10th Cir. 2004) (en banc) (per curiam). To determine a waiver's scope, we apply general contract principles, strictly construe the appellate waiver, and read any ambiguities against the Government and in favor of Defendant's appellate rights. *See id.* at 1324–25.

We must, therefore, begin by examining the appellate waiver's language. Defendant agreed to waive the right to appeal:

> any sentence and fine within or below the applicable advisory guideline range as determined by the Court . . . . In other words, the Defendant waives . . . the right to appeal any sentence imposed in this case except to appeal the Defendant's sentence to the extent, if any, that the Court may depart or vary upward from the advisory sentencing guideline range as determined by the Court.

The Government argues that, because the ACCA enhancement increased Defendant's guideline sentence to 15 years and the district court did not depart or vary upward from that ACCA guideline sentence, Defendant's challenge to the district court's ACCA fact-finding authority falls squarely within the appellate waiver. Defendant rejects that

12

view, asserting that "challenging the district court's power to make factual findings is not an attack on the sentence . . . and is outside the scope of the appellate waiver." Appellant's Opening Br. 35–36. Because each party's reading is equally plausible, we read this ambiguity against the Government and in favor of Defendant's appellate rights.

The issue before us, therefore, is whether the district court can find a Defendant's prior convictions were "committed on occasions different from one another," 18 U.S.C. § 924(e), or if that is a factual determination reserved for the jury.[1] We review this claim de novo. *United States v. Michel*, 446 F.3d 1122, 1132 (10th Cir. 2006). Relying on *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and its progeny, Defendant argues the question of whether his previous convictions were committed on different occasions is an issue of fact which must be submitted to a jury and proved beyond a reasonable doubt, because they are facts that increase the mandatory minimum sentence. *Alleyne*, 570 U.S. at 108.

While Defendant's argument is not without some force, our precedent forecloses such an argument. In *Michel*, we rejected a defendant's claim that whether his prior

---

[1] To the extent Defendant is arguing a jury must find whether his previous convictions are "serious drug offense[s]," 18 U.S.C. § 924(e)(2)(A)(ii), he is mistaken. The issue of whether Defendant's prior convictions satisfy the ACCA's definition for serious drug offense "involves a question of law for a court to decide, and not a question of fact for a jury." *United States v. Moore*, 401 F.3d 1220, 1224 (10th Cir. 2005); *United States v. Easterling*, 137 F. App'x 143, 147 (10th Cir. 2005) (unpublished) ("[T]he determination of whether a prior felony constitutes a 'serious drug offense' under the ACCA is a question of law and not fact, and thus there is no requirement that the existence of such prior convictions be charged in the indictment or proven to a jury under a beyond a reasonable doubt standard.").

convictions were committed on occasions different from one another was a factual question that must be decided by a jury. 446 F.3d at 1132–33; *see also United States v. Harris*, 447 F.3d 1300, 1303 (10th Cir. 2006). Relying on *Apprendi*'s prior-conviction exception—which excludes the "fact of a prior conviction" as a matter for jury deliberation, 530 U.S. at 490—we held that "whether prior convictions happened on different occasions from one another is not a fact required to be determined by a jury but is instead a matter for the sentencing court." *Michel*, 446 F.3d at 1133; *see also Harris*, 447 F.3d at 1303. We reasoned that certain issues of fact "inherent in the convictions themselves" or "sufficiently interwoven with the facts of the prior crimes" do not need to be submitted to a jury and found beyond a reasonable doubt because *Apprendi* left to the judge "the task of finding not only the mere fact of previous convictions but other related issues as well." *Michel*, 446 F.3d at 1133 (quoting *United States v. Thompson*, 421 F.3d 278, 286 (4th Cir. 2005); *United States v. Santiago*, 268 F.3d 151, 156–57 (2d Cir. 2001)).

Absent en banc reconsideration or a superseding contrary decision by the Supreme Court, we are bound by the precedent of prior panels. *E.g.*, *In re Smith*, 10 F.3d 723, 724 (10th Cir. 1993) (per curiam). Defendant seems to suggest that the Supreme Court's decision in *United States v. Haymond*, 139 S. Ct. 2369 (2019) (plurality), contradicts our holding in *Michel*. We disagree. We need not deeply analyze the *Haymond* decision in this case to decide whether it contradicts *Michel*, because Justice Gorsuch's plurality opinion—the opinion relied upon by Defendant—explicitly states the prior-conviction exception is not implicated in its decision. *Id.*

14

at 2377 n.3. And recently, when given the opportunity to decide "whether the Sixth Amendment requires that a jury, rather than a judge, resolve whether prior crimes occurred on a single occasion"—the same issue presented here and in *Michel*—the Supreme Court declined to reach the issue. *Wooden v. United States*, 142 S. Ct. 1063, 1068 n.3 (2022). We do not read *Haymond* to contradict our holding in *Michel*, especially in light of the Supreme Court's refusal to reach the issue in *Wooden*. The Supreme Court may disagree with our prior precedent and reach a different result in the future, but until then *Michel* remains the law of this Circuit. Thus, the district court had the authority to decide whether Defendant's prior convictions were "committed on occasions different from one another."[2] 18 U.S.C. § 924(e)(1); *see Michel*, 446 F.3d at 1132–33.

## IV.

Defendant's final argument on appeal is that he had insufficient notice that the ACCA might apply to him before he pleaded guilty. According to Defendant, he was denied procedural due process because the ACCA was not mentioned in the arraignment, the indictment, or the information; the plea agreement did not specifically state that he had three prior drug-trafficking convictions in federal court; and the plea colloquy did not specifically identify the prior convictions that could be used to

---

[2] We need not decide whether the district court properly held Defendant's prior convictions were committed on occasions different from one another because Defendant does not challenge that factual finding—he only challenges the district court's authority to make such a finding.

enhance his sentence under the ACCA.[3]  We review this issue de novo.  *See United States v. Hardy*, 52 F.3d 147, 150 (7th Cir. 1995).

To satisfy procedural due process, "a defendant must receive reasonable notice and an opportunity to be heard relative to the recidivist charge even if due process does not require that notice be given prior to the trial on the substantive offense."  *Oyler v. Boles*, 368 U.S. 448, 452 (1962); *United States v. Craveiro*, 907 F.2d 260, 264 (1st Cir. 1990); *Hardy*, 52 F.3d at 150.  Defendant received due process because he had actual notice of the possibility of an ACCA enhancement in a reasonable time as well as the opportunity to be heard concerning that status.  *Hardy*, 52 F.3d at 150; *United States v. Gibson*, 64 F.3d 617, 625–26 (11th Cir. 1995); *United States v. Garcia*, 188 F. App'x 706, 709 (10th Cir. 2006) (unpublished); *United States v. Triplett*, 160 F. App'x 753, 763 (10th Cir. 2005) (unpublished); *United States v. Martinez*, 30 F. App'x 900, 907–08 (10th Cir. 2002) (unpublished).

The plea agreement notified Defendant that he faced a 15-year mandatory minimum sentence if the district court determined he was an armed career criminal.  *See Triplett*, 160 F. App'x at 763.  Before Defendant pleaded guilty, trial counsel obtained the previous federal court judgment listing Defendant's three previous drug-distribution convictions and discussed the possibility of an ACCA sentence with Defendant.  *See United States v. Mauldin*, 109 F.3d 1159, 1163 (6th Cir. 1997); *Gibson*,

---

[3] In making this argument, Defendant might be trying to make additional arguments under the Equal Protection Clause and the Sixth Amendment.  But his briefing is insufficiently developed for us to address any such arguments.  *See United States v. Wooten*, 377 F.3d 1134, 1145 (10th Cir. 2004).

64 F.3d at 626. At the plea colloquy, the Government informed Defendant that an ACCA sentence would be imposed if he were found to be an armed career criminal. *See United States v. Cobia*, 41 F.3d 1473, 1476 (11th Cir. 1995) (per curiam); *Garcia*, 188 F. App'x at 709; *Triplett*, 160 F. App'x at 763. Finally, the PSR recommended an ACCA sentence be imposed and identified the specific federal drug-trafficking convictions that supported the enhancement. *See United States v. O'Neal*, 180 F.3d 115, 126 (4th Cir. 1999); *Hardy*, 52 F.3d at 150. Defendant also had a sufficient opportunity to be heard concerning the ACCA enhancement. He took advantage of this opportunity by filing written objections to the PSR and reraising those objections at his sentencing hearing. *See O'Neal*, 180 F.3d at 126. Defendant received due process.

Defendant's arguments to the contrary are unpersuasive. There is no statutory or constitutional requirement that the Government mention the ACCA or list the anticipated predicate felonies in his indictment or information, or at his arraignment. *See id.* at 125; *Craveiro*, 907 F.2d at 264; *Moore*, 401 F.3d at 1226. And the Government was not required to explicitly identify which convictions may serve as ACCA predicate felonies in the plea agreement or at the plea colloquy—at least where, like here, the PSR listed the defendant's ACCA predicate felonies. *See O'Neal*, 180 F.3d at 125–26.

*                  *                  *

For the reasons stated herein, the district court's judgment and sentence are **AFFIRMED**.