FILED
**United States Court of Appeals**
**Tenth Circuit**

## UNITED STATES COURT OF APPEALS

## FOR THE TENTH CIRCUIT

**August 16, 2022**

**Christopher M. Wolpert**
**Clerk of Court**

_____

GENE GILBERT ELLIS, III,

    Petitioner - Appellant,

v.

RAYMOND SMITH, Warden;
ATTORNEY GENERAL OF THE STATE
OF NEW MEXICO,

    Respondents - Appellees.

No. 21-2122
(D.C. No. 2:18-CV-00012-JCH-KRS)
(D. N.M.)

_____

## ORDER DENYING CERTIFICATE OF APPEALABILITY[*]
_____

Before **HARTZ**, **HOLMES**, and **McHUGH**, Circuit Judges.
_____

Gene Gilbert Ellis, III, a New Mexico prisoner proceeding pro se,[1] requests a

certificate of appealability (COA) to appeal the district court order denying his 28 U.S.C.

§ 2254 habeas application. We deny a COA and dismiss this matter.

---

[*] This order is not binding precedent except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

[1] Because he is pro se, we liberally construe Mr. Ellis's combined application for a COA and opening brief. *See Hall v. Scott*, 292 F.3d 1264, 1266 (10th Cir. 2002).

## I. BACKGROUND

Mr. Ellis was charged with nine criminal counts in state court—first-degree

kidnapping, four counts of second-degree criminal sexual penetration (CSP),

second-degree criminal sexual contact with a minor (CSCM), aggravated burglary with a

deadly weapon, aggravated assault, and bribery of a witness.  He pleaded not guilty at his

arraignment, but at a pre-trial conference a few months later, he changed his plea to

guilty on all counts even though the prosecution had not made a plea offer.  The state

court accepted his plea and sentenced him to forty-three years in prison plus a parole

period of five to twenty years.

Mr. Ellis directly appealed his sentence.  While the appeal was pending, the

prosecution notified the court that under the applicable sentencing statutes, the parole

term should have been five years to life.  Also while the appeal was pending, Mr. Ellis

filed two motions to withdraw his plea, claiming counsel was ineffective for failing to

advise him both about the consequences of his plea and that the victim had stopped

cooperating with the prosecution and might not testify at trial.

The New Mexico Court of Appeals affirmed the sentence and remanded for a

determination of the correct parole period.  The New Mexico Supreme Court denied

further review.  On remand, the state district court amended the sentence to include a

parole term of five years to life.  It also denied Mr. Ellis's motions to withdraw his plea.

Mr. Ellis then filed a state habeas petition claiming (1) counsel was ineffective for

allegedly assuring him that he would be sentenced to no more than fifteen years if he

pleaded guilty, for failing to advise him that the victim was no longer cooperating with

2

the prosecution, and for misadvising him about the parole consequences of his plea;
(2) his convictions for both aggravated burglary and CSP, and his convictions for
separate instances of CSP and CSCM, violated double jeopardy principles; and (3) his
kidnapping conviction violated New Mexico's incidental-restraint limitation. The trial
court denied the petition and the New Mexico Supreme Court denied certiorari review.

Proceeding pro se, Mr. Ellis filed his § 2254 habeas application in federal district
court, raising the same claims he raised in his state habeas petition and his motions to
withdraw his plea. He also raised an unexhausted claim and asked the district court to
issue a stay and hold his petition in abeyance pending state-court review of the
unexhausted claim. After the district court denied the motion for stay and abeyance,
Mr. Ellis withdrew the unexhausted claim. The magistrate judge issued proposed
findings and a recommendation to deny the exhausted claims on the merits, concluding
that the third claim was procedurally defaulted and that the state court did not make an
unreasonable determination of the facts in rejecting the other claims and that its decision
was not contrary to or an unreasonable application of federal law. The district court
overruled Mr. Ellis's objections to the magistrate judge's findings, adopted her
recommendation, and dismissed the case with prejudice. It also denied a COA.

## II.  LEGAL STANDARDS

### 1.  COA and AEDPA Standards

Mr. Ellis  must obtain a COA for this court to review the district court's denial of
his § 2254 application. *See* 28 U.S.C. § 2253(c)(1)(A). To do so, he must make
"a substantial showing of the denial of a constitutional right." *Id.* § 2253(c)(2). For

3

claims denied on the merits, Mr. Ellis "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). For the claims denied on procedural grounds, he must demonstrate "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right *and* . . . whether the district court was correct in its procedural ruling." *Id.* (emphasis added).

Our consideration of Mr. Ellis's request for a COA must account for the Antiterrorism and Effective Death Penalty Act (AEDPA), which requires "deferential treatment of state court decisions." *Dockins v. Hines*, 374 F.3d 935, 938 (10th Cir. 2004). Under AEDPA, when a state court has adjudicated the merits of a claim, a federal district court cannot grant habeas relief on that claim unless the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," *id.* § 2254(d)(2). When the district court has denied § 2254 habeas relief on the merits, we must determine as part of our COA analysis whether reasonable jurists would debate the court's decision in light of AEDPA deference to the state court. *See Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003).

"When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Harrington v. Richter*, 562 U.S. 86, 99 (2011). The petitioner has the burden of showing

4

that the claim was not adjudicated on the merits. *See Fairchild v. Trammell*, 784 F.3d 702, 711 (10th Cir. 2015). When there is no indication that the state court did not reach the merits of a claim, "we have held that a state court reaches a decision on the merits even when it fails either to mention the federal basis for the claim or cite any state or federal law in support of its conclusion." *Dodd v. Trammell*, 753 F.3d 971, 983 (10th Cir. 2013) (ellipsis and internal quotation marks omitted).

Finally, for claims that have been adjudicated on the merits by a state court, "a federal habeas petitioner must overcome the limitation of § 2254(d)(1) on the record that was before th[e] state court." *Cullen v. Pinholster*, 563 U.S. 170, 185 (2011). Because federal habeas review of such claims is limited to the state court record, *id.* at 181, *Pinholster* bars an evidentiary hearing in federal court, *see id.* at 185 ("evidence introduced in federal court has no bearing on § 2254(d)(1) review").

### 2. Procedural Default

"In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can" overcome the default. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991), *abrogated on other grounds by Martinez v. Ryan*, 132 S. Ct. 1309, 1315 (2012); *see also Bunton v. Atherton*, 613 F.3d 973, 989 (10th Cir. 2010) ("Federal habeas courts are prohibited from reviewing a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment." (brackets and internal quotation marks omitted)). "A state procedural default is 'independent' if it

5

relies on state law, rather than federal law," and it "is 'adequate' if it is firmly established and regularly followed." *Smith v. Workman*, 550 F.3d 1258, 1274 (10th Cir. 2008).

To overcome a procedural default, an applicant must either "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750.

### III.    ANAYLSIS

Mr. Ellis is not entitled to a COA because reasonable jurists could not debate whether the district court correctly decided the issues he seeks to appeal

### 1. Procedural Default of Claim Challenging Kidnapping Conviction

Mr. Ellis contended in both his state and federal habeas petitions that his kidnapping conviction must be vacated under New Mexico's incidental-restraint limitation, because any restraint he used on the victim was incidental to the CSP.  *See State v. Trujillo*, 289 P.3d 238, 250 (N.M. Ct. App. 2012) ("[T]he Legislature did not intend to punish as kidnapping restraints that are merely incidental to another crime.").  The state court declined to consider the claim, concluding he waived it by failing to raise it on direct appeal.  *See Duncan v. Kerby*, 851 P.2d 466, 468 (N.M. 1993).  The federal district court agreed that the claim was waived under *Duncan*, and it concluded that the limited exceptions to the *Duncan* rule were inapplicable.  *See id.* (permitting habeas review notwithstanding failure to raise issues on direct appeal "when fundamental error has occurred . . . or when an adequate record to address the claim properly was not available on direct appeal").  It thus concluded the claim was procedurally defaulted on

an independent and adequate state ground. *See Jackson v. Shanks*, 143 F.3d 1313, 1318 (10th Cir. 1998) (recognizing that New Mexico's procedural bar to claims not raised on direct appeal is an independent and adequate state ground for applying the federal habeas procedural-default doctrine). The court also found that Mr. Ellis had shown neither cause and prejudice nor a fundamental miscarriage of justice to excuse the default.

Before this court, Mr. Ellis does not dispute that he failed to raise this challenge to his kidnapping conviction on direct appeal. Nor does he dispute the district court's finding that the claim was waived under *Duncan* and was thus procedurally defaulted. And he does not argue that the district court erred in concluding there was no basis for excusing the default. Instead, he focuses on the merits of the underlying claim, insisting that "moving a victim from one room to the next in the same dwelling does not constitute kidnapping," Aplt. Opening Br. at 8, and that he "should have been charged with false imprisonment instead of kidnapping," *id.* at 9. By failing to address the grounds for the district court's decision, Mr. Ellis has waived any potential challenge to that decision. *See Davis v. McCollum*, 798 F.3d 1317, 1320 (10th Cir. 2015). And he has failed to establish that reasonable jurists would debate the district court's decision. We thus deny a COA as to the incidental-restraint claim.

## 2. Denial of Ineffective Assistance of Counsel Claims

### A. Legal Framework

To prove ineffective assistance of counsel, a habeas petitioner must show that his attorney's performance was both constitutionally deficient and prejudicial. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). The failure to establish either prong

is sufficient to warrant denial of the petition. *See id.* To establish prejudice in the guilty

plea context, the petitioner must show "there is a reasonable probability that, but for

counsel's errors, he would not have pleaded guilty and insisted on going to trial." *United*

*States v. Reed*, 39 F.4th 1285, 1293 (10th Cir. 2022) (internal quotation marks omitted).

But a petitioner's allegation that he would have insisted on going to trial is insufficient to

establish prejudice. *Miller v. Champion*, 262 F.3d 1066, 1072 (10th Cir. 2001). Instead,

courts "look to the factual circumstances surrounding the plea," *id.*, and "review the

strength of the prosecutor's case as the best evidence of whether" the defendant would

have insisted on going to trial, *Reed*, 39 F.4th at 1293 (internal quotation marks omitted).

"When a habeas petitioner alleges ineffective assistance of counsel, deference

exists both in the underlying constitutional test (*Strickland*) and the AEDPA's standard

for habeas relief, creating a doubly deferential judicial review." *Harris v. Sharp*,

941 F.3d 962, 973 (10th Cir. 2019) (internal quotation marks omitted). "Under this

double deference, [courts must] consider whether there is *any reasonable argument* that

counsel satisfied *Strickland*'s deferential standard." *Id.* at 974 (internal quotation marks

omitted).

## B. Application

In denying Mr. Ellis's motions to withdraw his plea, the state court found no

evidence to support his claim that the victim was not cooperating with the prosecution

and would not testify at trial. Based on counsel's affidavit, the state court further found

that Mr. Ellis "changed his plea without ever giving [counsel] a chance to elicit a written

plea offer," and that counsel advised him the prosecution was seeking a sentence of at

least 45 years.  R. at 520-21.  The court concluded that his "plea was voluntary" and that "he understood his rights and wanted to proceed with the change of plea" despite counsel's advice "to wait for [a] plea offer[]."  *Id.* at 521.  Moreover, the court found there was "independent evidence of the rape," including DNA evidence establishing Mr. Ellis's guilt "to a reasonable degree of scientific certainty."  *Id.*

Then, in denying Mr. Ellis's habeas petition, the state court found that he "changed his plea of his own accord, without inducement of his attorney, and before his counsel could obtain a plea" offer from the prosecution.  *Id.* at 886.  The court further found that he "accept[ed] responsibility"—again "of his own accord"—by sending multiple letters to both the victim and the prosecutor "explaining in detail his crimes." *Id.*  And it noted that he admitted his guilt at the sentencing hearing when he said that "what he did was wrong and disgusting," and "he disputed nothing said by the prosecutor or his attorney."  *Id.* at 886-87.  The court rejected Mr. Ellis's assertion that counsel told him he would be sentenced to only fifteen years if he pleaded guilty, and it found based on counsel's affidavit that counsel informed Mr. Ellis before he changed his plea that he could be facing 105 years in prison.  The state court thus concluded that Mr. Ellis's "own words and actions are a clear indication that [he] pleaded guilty fully informed [and] that he in fact committed the acts alleged."  *Id.* at 887.  The court recognized that Mr. Ellis "was misinformed" about parole but found that he did not establish that he would not have pled guilty but for the "mis-statement" because he "acknowledged that he knew of the life-time exposure" he faced when he said at sentencing that he knew the prosecution

9

"was seeking to put him away for the rest of his life." *Id.* (internal quotation marks omitted).

Since the state court adjudicated the ineffective-assistance claims on the merits, its decision is subject to AEDPA double deference. After reviewing the state-court record, the district court concluded that Mr. Ellis failed to submit "clear and convincing evidence to overcome the presumption of correctness that must be afforded to the state court's factual findings." *Id.* at 1161. It explained that his challenges to the state court's decision to credit counsel's statements in his affidavit over Mr. Ellis's assertions about counsel's representations regarding the likely sentence were insufficient to establish that the state court's decision was based on an unreasonable determination of the facts. With respect to the state court's finding that Mr. Ellis failed to establish that he was prejudiced by counsel's failure to tell him about the victim's alleged noncooperation with the prosecution, the district court found that he "pointed to nothing in the record showing that [she] would not testify" other than "his own . . . ineffective-assistance claim alleging as much." *Id.* at 1162. And it agreed with the state court's finding based on counsel's affidavit that both counsel and Mr. Ellis "believed at the time of [the] plea" that she would be testifying. *Id.* Finally, based on that finding and other circumstances surrounding the plea—including Mr. Ellis's admissions, the undisputed "physical evidence tying him to the crime," and his acknowledgment that he understood that "he faced prison time for the rest of his life," *id.* at 1113 (internal quotation marks omitted)— the district court rejected his assertion that he would have insisted on going to trial but for

counsel's alleged representations about the likely prison sentence and erroneous advice about parole.

Before this court, Mr. Ellis presents the same factual narrative he presented in his state and federal court habeas filings, and he takes issue with some of the state court's factual findings, particularly its resolution of the conflicts between his assertions about his conversations with counsel and counsel's affidavit.  He also complains that the district court did not hold an evidentiary hearing on these claims.  But he has not shown that those findings are unreasonable, *see* 18 U.S.C. § 2254(d)(2), or that the state court's evaluation of his ineffective-assistance claims was contrary to or an unreasonable application of *Strickland*.  Reasonable jurists would not debate the correctness of the district court's denial of Mr. Ellis's ineffective assistance claims.  Nor would reasonable jurists debate the correctness of the district court's decision not to hold a hearing given its determination that the state court record established that he was not entitled to relief under § 2254.  *See Pinholster*, 563 U.S. at 181, 185.  We thus deny a COA as to those claims.

### 3.  Denial of Double Jeopardy Claims

### A.  Legal Framework

"The Fifth Amendment's guarantee against double jeopardy protects against multiple punishments for the same offense." *Mansfield v. Champion*, 992 F.2d 1098, 1100 (10th Cir. 1993) (internal quotation marks omitted).  "[W]here the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each

provision requires proof of a fact which the other does not." *Blockburger v. United States*, 284 U.S. 299, 304 (1932). As long as each offense "requires proof of a fact that the other does not, the *Blockburger* test is satisfied, notwithstanding a substantial overlap in the proof offered to establish the crimes." *Iannelli v. United States*, 420 U.S. 770, 785 n.17 (1975).

Under New Mexico law, the prohibition against multiple punishments for the same offense arises in two contexts: "unit of prosecution cases" and "double-description cases." *Swafford v. State*, 810 P.2d 1223, 1228 (N.M. 1991). In a unit-of-prosecution case, the defendant is "charged with multiple violations of a single statute based on a single course of conduct." *Id.* The question in those cases is "whether the legislature intended punishment for the entire course of conduct or for each discrete act." *Id.* In a double-description case, the defendant is charged with violating multiple statutes that "may or may not be deemed the same offense for double jeopardy purposes." *Id.* Courts follow a two-step inquiry in those cases, asking first whether the conduct underlying the two offenses was unitary. *Lucero v. Kerby*, 133 F.3d 1299, 1316 (10th Cir. 1998). Conduct is not unitary if there is "an identifiable point at which one of the charged crimes had been completed and the other not yet committed." *State v. DeGraff*, 131 P.3d 61, 71 (N.M. 2006). If the conduct was nonunitary, multiple punishments do not violate double jeopardy principles. *Lucero*, 133 F.3d at 1316. But if the conduct was unitary, the court must determine whether the legislature intended to authorize multiple punishments for the same offense. *Id.* Federal courts "defer to the state court's interpretation of the

relevant statutory provisions" in determining whether a defendant's conduct constituted a single offense or separate offenses for double jeopardy purposes. *Id.*

## B. Application

According to Mr. Ellis, he was placed in jeopardy twice when he was sentenced for both his aggravated burglary and CSP convictions, and again when he was sentenced for separate instances of CSP and CSCM.

### i.     Aggravated Burglary and CSP Convictions

In denying Mr. Ellis's state-court habeas petition, the state court rejected his double jeopardy claim concerning the aggravated burglary and CSP convictions, concluding that the "aggravated burglary occurred as [Mr. Ellis] entered the [victim's] apartment without authorization and with the intent to commit a felony therein," and the "various acts of [CSP] then took place after the aggravated burglary." R. at 887.

Because the state court adjudicated this claim on the merits, the district court afforded the state court's decision AEDPA deference. The district court fleshed out the state court's decision by explaining that the claim was a double-description claim because it involved violations of different statutes. It then explained that the aggravated burglary conviction was based on Mr. Ellis's unlawful entry into the victim's apartment while armed with a deadly weapon and with the intent to commit a felony therein, *see* N.M. Stat. Ann. § 30-16-4(A), and that his CSP convictions were based on his having sexually assaulted her once inside the apartment, *see id.* § 30-9-11(E)(6). The aggravated burglary was thus "finished as soon as [Mr.] Ellis entered the apartment without permission while armed," and "before [he] engaged in any conduct underlying any of his subsequent"

sexual assaults. R. at 1119 (italics omitted). Because there was an identifiable point at which the aggravated burglary was completed and the CSPs had not yet been committed, the crimes were nonunitary under New Mexico law. *See State v. Montoya*, 259 P.3d 820, 829 (N.M. Ct. App. 2011) (convictions for aggravated burglary of a vehicle with a deadly weapon and CSP with a deadly weapon were nonunitary because the burglary was completed "as soon as [the defendant] . . . gained entry to [the victim's] vehicle while armed," and "[t]he force [he] used to gain entry into [her] car . . . was distinct from the force used to restrain [her] in order to commit [CSP]"); *State v. Livernois*, 934 P.2d 1057, 1063 (N.M. 1997) (concluding aggravated burglary and murder convictions were nonunitary because defendant completed the burglary before committing the murder); *cf. Lucero*, 133 F.3d at 1317-19 (concluding aggravated burglary and attempted CSP convictions were unitary where aggravating factor for the burglary charge was commission of a battery, so burglary was not complete until battery was committed, and the same conduct supported the battery and attempted CSP convictions).

In this court, Mr. Ellis insists that his aggravated burglary and CSP convictions violate double jeopardy because "the rape could not have occurred without the burglary." Aplt. Opening Br. at 10. True, he had to gain access to the victim's apartment to rape her. But his entry into her apartment with intent to sexually assault her and the sexual assaults themselves were separate crimes and were separately punishable. *See Montoya*, 259 P.3d at 829; *Livernois*, 934 P.2d at 1063. Mr. Ellis contends that "further research in the matter could uncover sturdier arguments along with a firmer understanding," Aplt. Opening Br. at 10, but he does not identify any arguments that would lead reasonable

14

jurists to debate the correctness of the district court's denial of this claim. Accordingly, we deny a COA.

### ii.    Multiple CSP and CSCM Convictions

Mr. Ellis is also not entitled to a COA on his double jeopardy claim regarding his CSP and CSCM convictions.

He raised this claim in his state-court habeas petition and the respondent addressed it in the response, but the state court made no findings about the claim when it denied the petition. Because the state court was fully apprised of this claim when it denied the petition, and Mr. Ellis did not rebut the presumption that the claim was adjudicated on the merits despite the state court's failure to expressly address it, AEDPA deference applies. *See Richter*, 562 U.S. at 99.

Applying AEDPA deference, the federal district court concluded that the state court's denial of this claim was not an unreasonable application of clearly established federal law and was not based on an unreasonable determination of the facts. As the court explained, the claim challenging the multiple CSP convictions was a unit-of-prosecution challenge. Under New Mexico law, the question in determining the units of prosecution in a CSP case "is whether each penetration is in some sense distinct under the evidence." *State v. Pisio*, 889 P.2d 860, 868 (N.M. Ct. App. 1994). To answer that question, courts consider a number of factors, including the "temporal proximity of penetrations" and "location of the victim during each penetration." *Herron v. State*, 805 P.2d 624, 628 (N.M. 1991). "[M]ovement or repositioning of the victim between penetrations tends to show separate offenses." *Id.* Applying the *Herron* factors, we have

15

found distinct CSPs against the same victim even in the same location and in a short period of time where the assailant penetrated the same orifice with different parts of his body and where the victim moved between penetrations. *See Lucero*, 133 F.3d at 1322.

Applying *Herron* to the facts here, the district court found that the state court's apparent conclusion that Mr. Ellis committed four distinct acts of sexual penetration was reasonable. The district court explained that the state court could reasonably have concluded that counts two and three were based on distinct acts because the conduct "occurred about ten minutes apart, involved different parts of [Mr.] Ellis's body penetrating different parts of [the victim's] body in different rooms, and were separated by several intervening events," including him striking her, dragging her from one room to another, and repositioning her. R. at 1123. The district court further concluded that the state court could reasonably have concluded that counts three and four were based on distinct acts even though they were committed in the same room "potentially in short temporal proximity," because they involved different parts of Mr. Ellis's body, and he "likely could not have accomplished both penetrations without" the "intervening event" of one of them changing positions. *Id.* at 1123-24. Likewise, the district court held that the state court could reasonably have concluded that counts four and five were based on distinct acts despite having been committed in the same room because they involved different parts of Mr. Ellis's body and required either him or the victim to be repositioned, and his statement to the victim between the two penetrations that she was "gonna like the next part" suggested he "intended for them to be seen as distinct." *Id.* at 1125 (internal quotation marks omitted).

16

In this court, Mr. Ellis contends that the district court "miss[ed] the mark" in its application of *Herron* to his case, and he takes issue with some of its factual findings. Aplt. Opening Br. at 10. For example, he quibbles about what he characterizes as the court's inconsistent statements about the timeline, wonders how he could have "reposition[ed] himself or the victim if he was holding her down," *id.* at 11, and insists that he used the same amount of force against the victim during each offense. But none of these contentions undermines the district court's determination that the state court reasonably concluded that each of his CSP convictions was for a distinct criminal act. *See Lucero*, 133 F.3d at 1322 (finding distinct penetrations as to one victim where assailant digitally penetrated her while she was on her knees, and after she attempted to crawl away, he penetrated her again with his penis while she was on her stomach, and finding distinct penetration as to another victim where the assailant penetrated her with his finger when she was standing, ordered her to lie down, pushed her to the ground, and penetrated her again with his penis); *Herron*, 805 P.2d at 629 (finding two distinct CSP offenses where defendant forced victim into lying position on the floor and inserted his finger into her vagina and then forced her into kneeling position and penetrated her vaginally with his penis); *Pisio*, 889 P.2d at 864, 869 (concluding multiple counts of sexual misconduct committed during a single criminal episode were separate units of prosecution for double jeopardy purposes because they were distinct in "time, place, and other circumstances," including that they were committed in different rooms). And because the district court's determination was supported by the state court record, we

17

reject Mr. Ellis's contention that the court erred by denying the claim without holding a hearing. *See Pinholster*, 563 U.S. at 181, 185.

Turning to Mr. Ellis's double jeopardy challenge to the CSP and CSCM convictions, the district court concluded that his argument failed for two reasons. First, Mr. Ellis argued it under a unit-of-prosecution theory, which was baseless because the CSP convictions and the CSCM conviction arose under different statutes. Second, the district court concluded that the state court's rejection of the claim under a double-description theory would have been reasonable because the CSCM conviction was based on Mr. Ellis's contact with the victim's breast, and the CSP convictions were based on the serial penetrations. In this court, Mr. Ellis does not challenge that conclusion, so he has waived any challenge to that ruling. *See Davis*, 798 F.3d at 1320.

Reasonable jurists would not debate the correctness of the district court's denial of Mr. Ellis's double jeopardy claims. Accordingly, we deny a COA.

## CONCLUSION

We grant Mr. Ellis's motion to proceed without prepayment of fees and costs, deny a COA, and dismiss this matter.

<div style="margin-left: 50%;">

Entered for the Court


Jerome A. Holmes
Circuit Judge

</div>

18